**Marty Lee BOUNDS, Respondent,**

v.

**Marife Chu O'BRIEN, Appellant.**

**No. ED 82849.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 16, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 2004.

Application for Transfer Denied
June 22, 2004.

Chris Rollins, Kayla Vaughan, St. Louis, MO, for appellant.

Brian P. Seltzer, Crista C. Beracha, Clayton, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Marife O'Brien ("Mother") appeals the judgments declaring Marty Bounds ("Father") to be the father of her son, Blake, and awarding Father sole legal and physical custody. We affirm in part and reverse and remand in part.

Mother is a citizen of the Philippines and a permanent resident of the United States as a result of her prior marriage to a United States Citizen.[1] Father is an American citizen. Blake has dual Philippine and American citizenship by virtue of Mother's citizenship and his birth in this country.

Mother and Father first met in April 2000. About six months later, Mother became pregnant with Father's child and moved into his home. That child was later aborted. Shortly after the abortion, Mother became pregnant for a second time. The parties argued frequently, and Mother would periodically stay with friends until she and Father reconciled.

On November 9, 2001, Blake was born. Father did not sign the affidavit of paternity that would have acknowledged that he was the father and legally established his paternity. Mother and Blake returned to Father's home but the parties' stormy relationship did not improve. In December 2001 and in March 2002, police were called to the home. On March 8, 2002, Mother returned to Father's home after leaving for a couple of days because of an argument and discovered the locks had been changed. Father demanded that Mother move out of his house.

For the next month, Mother and Blake resided for brief periods with sympathetic friends. Mother was unemployed, and when she did find a cleaning job, she had to quit because Blake was sick and she could not arrange suitable child care. During this period, Mother periodically arranged meetings with Father so he could see Blake. The parties dispute whether Father paid for some necessities such as formula and diapers on these occasions. Father did make one token payment of $100. He did not, however, make any arrangement for regular child support or take any steps to formally acknowledge paternity. Finally, homeless, jobless, and unable to provide for Blake, Mother charged airline tickets on her credit card and, on April 26, 2002, she and Blake flew to the Philippines and returned to her parents' ("Grandparents") home in Cebu City, Philippines.

In July 2002, Mother returned to St. Louis, leaving Blake in the custody of Grandparents. Mother planned to work and amass sufficient savings to be able to support Blake when she brought him back to the United States for school. Mother

---

1. Mother's prior marriage was later dissolved and her former husband was awarded custody of Mother's other son, John.

found a job at a nursing home which included a room in which she could stay. However, Mother was not allowed to have visitors there and would not be allowed to live there with a child. Mother began sending money and packages of baby food and supplies to Grandparents to provide for Blake's support. Mother made no contact with Father upon her return.

In October 2002, Father learned where Mother was working. Father parked on the street outside the nursing home and waited for Mother to appear. When Mother drove up, he confronted her and asked where Blake was. Mother told him Blake was in another country but refused to tell him where. On October 21, 2002, Father filed the instant action seeking a declaration of his paternity, an order granting him sole legal and physical custody, and a change of Blake's surname to his own.

Mother filed an answer in which she admitted Father's allegation that he was Blake's natural father and disclosed that Blake was in Cebu City with Grandparents. A guardian ad litem was appointed for Blake. Mother filed a motion to dismiss for lack of jurisdiction, maintaining that the proper jurisdiction for adjudicating issues pertaining to Blake's custody was the Philippines. Mother also moved to join Grandparents as necessary parties. In that motion, Mother notified the court that Grandparents had filed an affidavit of guardianship with the court in Cebu City. Mother's motions and subsequent motions to reconsider both rulings were summarily denied without an evidentiary hearing.

Father moved for partial summary judgment on the issue of paternity based on Mother's admission of paternity in her answer. Mother filed a motion for paternity blood testing pursuant to section 210.834.1 RSMo 2000 and moved to dismiss Father's motion for partial summary judgment. Attached to the motion to dismiss Father's

motion were affidavits from Mother relating Father's repeated denials of paternity and from a friend of Mother's who stated that Mother had confided in her that she had had other partners and wasn't certain who was the Father of her child. Mother also sought a continuance to permit testing. The trial court convened a hearing on Mother's motion for blood testing and for a continuance. At the hearing, Mother testified she had no doubt that Father was the biological father of Blake. The trial court denied the motions and granted Father's motion for partial summary judgment on the issue of paternity. Mother filed a premature notice of appeal.

After an evidentiary hearing, on April 22, 2003 the trial court on Father's motion entered a judgment directing that Blake be returned to Father's custody no later than April 28, 2003. Mother, or a person designated by Mother, was directed to produce Blake and his passport to Father at the American Embassy in Manila or such other location in the Philippines as Father might direct. Father was awarded temporary physical custody of Blake, subject to the terms of a parenting plan.

Father traveled to the Philippines but was unsuccessful in obtaining custody of Blake. Father filed a motion to hold Mother in contempt and a motion for an expedited hearing on his request to change Blake's surname to his own. According to Father, the fact that he and the child had different last names had been an obstacle in his attempt to have the judgment enforced by a Philippines court. On June 5, 2003, after an evidentiary hearing, the trial court granted Father's petition for change of name.

On July 21, 2003, after an evidentiary hearing, the trial court entered judgment awarding Father sole legal and physical custody of Blake, with specified periods of visitation by Mother as set forth in the

parenting plan incorporated in the judgment. The judgment further ordered Mother to travel to the Philippines at Father's expense and return to St. Louis with Blake. Mother was ordered to place Blake and his passport in Father's custody no later than August 15, 2003. Mother amended her notice of appeal to include this judgment, which was now final for purposes of appeal.

In her first point, Mother claims the trial court erred as a matter of law in exercising jurisdiction over Father's petition for custody because the Philippines is the proper venue for determining custody. We review matters of jurisdiction *de novo*. *Love v. Love*, 75 S.W.3d 747, 755 (Mo.App. 2002). In Missouri, jurisdiction in child custody cases is governed by the Uniform Child Custody Jurisdiction Act ("UCCJA"), sections 452.440 through 452.550 RSMo 2000. It has been observed that it is implicit in the scheme of the UCCJA that the trial court should make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody. *Piedimonte v. Nissen*, 817 S.W.2d 260, 266 (Mo.App. 1991). Thus, a ruling of jurisdiction by a court that is merely conclusory or that assumes jurisdiction, but is tacit as to the factual basis for that adjudication, does not meet the objectives of the Act. *Id.*

In the instant case, the trial court made no express findings as to the factual basis for its assumption of jurisdiction. Father urges in his brief in this court that jurisdiction is properly predicated on section 452.450.1(2). That section permits the court to assume jurisdiction if it is in the best interest of the child that a court of this state assume jurisdiction because; (a) the child and his parents, or the child and at least one litigant, have a significant connection with the state; and (b) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. Father suggests that there is a significant connection with this state in that the child was born here and resided here from November 8, 2001 when he was born until April, 2002 when Mother took him to the Philippines and left him in Grandparents' care. Father further suggests that there is substantial evidence in this state concerning Father's ability to provide future care, protection, training and personal relationships.

It is questionable whether Blake can be said to have a significant connection with this state. Jurisdiction under section 452.450.1(2) is proper when there is "maximum rather than minimum contact with the state" and when there is "optimum access to relevant information about the child and his family." *In re B.R.F.*, 669 S.W.2d 240, 247 (Mo.App.1984) (quoting Commissioners' Note, UCCJA sec. 3, 9 ULA 124 (Master ed.1979)). The mere fact that he was born here is of little or no significance. At the time Father filed his action, Blake had lived in the Philippines longer than he had lived in Missouri. Virtually no current information about the child, his development or his personal relationships can be found in Missouri. The fact that his parents both reside here cannot, by itself, constitute a "significant connection" for purpose of our analysis because if it was, jurisdiction could be predicated on this ground in virtually any case where one parent was a resident. The statute, however clearly requires a significant connection with this state on the part of *both* the child and at least one litigant. We hold that section 452.450.1(2) does not provide a basis for jurisdiction in this case.

Although not argued by Father, another possible basis for jurisdiction is

the "default" provision found in section 452.450.1(4). Under that provision, the court may assume jurisdiction if it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that the circuit court assume jurisdiction. The Philippines is not a "state" within the meaning of the UCCJA. *State ex rel Rashid v. Drumm,* 824 S.W.2d 497, 503 (Mo.App.1992). However, the fact that no other state has jurisdiction is not dispositive of the question of availability of another forum. *Id.* at 504. Although Missouri has not extended the UCCJA to the international arena, the paramount concern of Missouri in a custody proceeding is the best interests of the child. *Id.* These interests may require that custody be determined by the courts of a foreign county. *Id.* The primary inquiry is whether there is an available foreign forum which would have jurisdiction substantially in accord with the principles of the UCCJA. *Id.* In determining whether a foreign forum is available, consideration must be given to whether the foreign forum could and would adjudicate the controversy. *Id.* Another factor is whether due process, including notice and the opportunity to be heard, will be accorded in the foreign proceeding. *Id.* A further factor is whether the foreign forum will be guided by the best interests of the child. *Id.* If there is an available foreign forum meeting this criteria, then the court should consider which forum has the strongest

basis for jurisdiction under section 452.450.1. *Id.*

Because the trial court never held a hearing on the issue of its jurisdiction and made no specific findings as to the basis for its jurisdiction, remand would ordinarily be required for specific findings on the factors set forth in *Rashid.* In this particular case, however, we find remand to be unnecessary because a written judgment entered in Grandparents' guardianship proceeding in Cebu City conclusively establishes each of the factors set forth in *Rashid.*

Grandparents, who were not parties to the proceedings below, filed a petition to confirm their guardianship of Blake with the court in Cebu City. It is unclear whether Father was given formal notice of this proceeding, but he did learn of its existence, hired local counsel in the Philippines, and testified in opposition to Grandparents' continuing custody of Blake. The court specifically held that in deciding cases of custody, the paramount consideration is the best interest of the child.[2] Thus, the judgment of the Philippine court conclusively establishes what the trial court could and should have established at a hearing on Mother's motion to dismiss. There is available in the Philippines a court that can and will adjudicate the controversy. It affords the parties due process, including representation by counsel and an opportunity to be heard. Its custody determinations are guided by the best interests of the child as the paramount consideration.

Having established that there is an available foreign forum, we must then con-

---

2. The Philippine court's order was issued on December 19, 2003, after the trial court's judgment that is the subject of this appeal. The Philippine court had a copy of the Missouri court's judgment but found that it was not bound to give it effect because it was found to be contrary to Philippine legislative policy. Grandparents were granted parental authority over Blake for a period of two years, at which time Mother was ordered to return Blake to the United States for school.

sider which forum has the strongest basis for jurisdiction under section 452.450.1. *Id.* The determination of the best interests of the child under section 452.450.1 refers to the choice of forum, not the fitness of the parents. *Id.* at 503.

We believe that the Philippine court clearly has the strongest basis for jurisdiction in this instance. The child was physically present in that jurisdiction and had been for nearly six months at the time Father filed his petition. Missouri was not in a position to make Grandparents parties to the suit and, wholly as a practical matter, they were lawfully in possession of the child's passport. Since the child cannot legally enter the United States without his passport, it should have been apparent to the court that it had no viable means of enforcing any judgment it might enter.[3] The Philippine court, on the other hand, clearly has the power to enforce its custody orders and is not required to give effect to any orders of a Missouri court.

We hold that the trial court erred in exercising jurisdiction over Father's petition for custody of Blake. Accordingly, we reverse the judgment as to custody and remand with directions to dismiss that count of the petition.

Mother's second, fourth and fifth points on appeal pertain to the custody judgment and are now moot. In her third point, Mother claims the trial court erred as a matter of law when it denied Mother's request for paternity testing pursuant to section 210.834 RSMo 2000 because the statute gives the trial court no discretion to deny testing when requested by a party. Section 210.834 provides, in pertinent part: "The court may, and upon request of any party shall require the child, Mother, alleged Father . . . to submit to blood tests." We agree with Mother that this section is unequivocal and deprives the trial court of any discretion to deny testing if requested by a party. However, in view of Mother's admission of Father's paternity in her pleading and her unequivocal testimony that she has no doubts that Father is Blake's biological father, she cannot be said to be aggrieved by the court's judgment of paternity. Point denied.

The trial court's judgment as to custody is reversed and the cause is remanded for further proceedings consistent with this opinion. In all other respects the judgment is affirmed.

BOOKER T. SHAW, P.J., and PATRICIA L. COHEN, J., Concur.

---

**3.** At Father's behest, the Missouri court has attempted to enforce its judgment by holding Mother in contempt. Indeed, Mother was jailed for approximately three months before she was ordered released by order of this court. Given the Philippine court's judgment awarding custody to Grandparents, it is not clear Mother could lawfully resume custody of Blake without further order of the court. At the very least she would be required to persuade the court that this was in Blake's best interest, a position she cannot lawfully be coerced to take. All that has been accomplished by putting Mother in jail is to deprive her of the opportunity to earn the money she hoped to save in order to return Blake to the United States for school. Thus, jailing Mother is decidedly not in either Blake's or Father's long term best interest.