## In re the MARRIAGE OF Leanna F. MILLER and James D. SUMPTER, Jr.

Leanna F. Miller, Petitioner–Respondent,

v.

James D. Sumpter, Jr., Respondent–Appellant.

No. 26830.

Missouri Court of Appeals, Southern District, Division Two.

July 31, 2006.

Sarah Luce Reeder, Joplin, MO, for appellant.

Susan S. Jensen, Springfield, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

James D. Sumpter, Jr. (Father) has appealed from a default judgment that dissolved his marriage to Leanna F. Miller (Mother), awarded Mother sole legal and physical custody of the parties' two minor children, granted Father reasonable visitation, ordered Father to pay $631 per month as child support and divided the parties' assets and debts. Father contends the judgment should be reversed for three reasons: (1) the trial court did not have subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA) to adjudicate the issue of child custody; (2) hence, the court also lacked subject matter jurisdiction to adjudicate the issue of child support; and (3) the court abused its discretion by unfairly and inequitably dividing the parties' property.[1] For reasons explained below, we agree with Father that the provisions of the judgment dealing with child custody and child support must be reversed for lack of subject matter jurisdiction. Fa-

ther's point dealing with the division of the parties' property and debts, however, must be dismissed because he is attempting to directly appeal from a default judgment without first having filed a timely motion to set aside or vacate that judgment.

## I. Factual and Procedural Background

Mother has been a resident of Barton County, Missouri, for 39 years. In October 1986, she joined the United States Army. After Mother became a member of the military, she continued to list Lamar, Missouri, as her permanent residence. It is her intention to return to Missouri to live upon her retirement from the Army. Since 1986, however, her physical presence in Missouri has been limited to those occasions when she returned to the state while on leave.

Father and Mother were married in Lamar, Missouri, on October 21, 1989, but the couple has never lived in this state. In 1994, they moved to West Point, New York, because Mother was transferred to an Army base there. While living in New York, Father and Mother had two children: Calvin Sumpter, who was born in January 1995; and Bradley Sumpter, who was born in September 1996.[2] In 1998, Mother was transferred to an Army base in Hawaii. The family lived there until July 2002, when Mother was transferred again. In the process of moving from Hawaii to Virginia, the family stayed with Mother's parents in Lamar, Missouri, for several weeks while Mother was on leave.

In September 2002, the family moved into base housing at Mother's new duty station in Ft. Belvoir, Virginia. Both of

1. All references to statutes are to RSMo (2000) unless otherwise specified. Missouri's version of the UCCJA is codified at §§ 452.440–.550.

2. Hereinafter, the parties' offspring will be individually identified by their first names and collectively described as "the children."

the children have medical problems for which they have received treatment and other services in Virginia. Calvin has asthma and also receives weekly mental health therapy. Bradley has reactive airway disease, bronchiactasis and autism. His autism is sufficiently severe that he requires constant care and supervision, and it is very doubtful he will ever be able to live independently. He receives special services through autism-inclusion classes at a Virginia public school, and he receives in-home behavioral therapy as well.

On October 29, 2003, the parties separated and Father moved out. Mother, Calvin and Bradley continued to live on base at Ft. Belvoir. Father moved to Woodbridge, Virginia, but he continued working in Ft. Belvoir. On October 30, 2003, Mother obtained a temporary protective order barring Father from having any contact with Mother or the children based upon allegations of domestic abuse. After a hearing, a court in Fairfax County, Virginia, extended the effective date of the initial protective order for six months. On December 10, 2003, the court modified the order so that it would not terminate for two more years.

On August 31, 2004, Mother filed a petition for dissolution of marriage in the Circuit Court of Barton County, Missouri. The petition alleged that Mother was a Missouri resident and that Calvin and Bradley resided with Mother in Ft. Belvoir, Virginia. The summons and petition were personally served upon Father on October 29, 2004 by the Sheriff of Fairfax County, Virginia. Father failed to file an answer to the petition and was in default.

In certain limited circumstances, the Circuit Court of Barton County permits the entry of a dissolution judgment upon the affidavit of one party in the event the adverse party defaults.[3] On December 3, 2004, Mother sought to avail herself of this rule by filing such an affidavit. On December 6, 2004, the trial court entered a judgment dissolving the parties' marriage, awarded Mother sole legal and physical custody of the two minor children, granted Father reasonable visitation, ordered Father to pay child support in the amount of $631 per month and divided the parties' property and debts.

On December 14, 2004, Father's attorney filed a special entry of appearance on Father's behalf and challenged the trial court's jurisdiction to proceed under the UCCJA. Specifically, Father contended the trial court lacked jurisdiction over the children because: (1) Virginia was their home state since they had lived there for more than six months preceding the filing of Mother's petition for dissolution of marriage; (2) substantial evidence concerning the children's present or future care, protection, training and personal relationships was available in Virginia; and (3) Father had a significant connection with that state.

On December 29, 2004, the court held a hearing at which both Father and Mother were present and represented by counsel. At the request of Father's counsel, the court set aside the December 6, 2004 judgment because Local Rule 68.12 did not authorize the entry of a dissolution

---

**3.** Local Rule 68.12(2) (2006) of the 28th Judicial Circuit requires that the affidavit must set "forth sworn testimony showing the Court's jurisdiction and factual averments sufficient to support the relief requested in the proceeding. . . ." This local rule does not allow entry of a dissolution judgment by affidavit when there are minor children whose custody and support must be determined or there is marital property to be divided unless the parties have entered into a written agreement addressing those issues. No such written agreement had been reached in the case at bar.

judgment by affidavit in this situation.[4] The court then took up Father's motion challenging the court's subject matter jurisdiction to adjudicate the issues of child custody and support under the UCCJA. Father was allowed to present evidence (which we previously summarized above) concerning where and when the family had lived in various states in order to support his jurisdictional challenge. The court overruled the motion because "even for purposes of [the UCCJA], ... the residence of the children is whatever the residence of the custodial parent is for purposes of determining jurisdiction." Thereafter, the court took up Mother's petition for dissolution. Since Father was still in default, the court decided to hear Mother's testimony and then enter a new default judgment.[5] Father and his attorney were not permitted to participate in the presentation of evidence concerning the merits of the dissolution action.

On January 7, 2005, the trial court entered a new default judgment against Father. The court made the following finding to establish its jurisdiction under the UCCJA:

> That [Mother] and minor children have been residents of this state for more than ninety days immediately preceding the commencement of this proceeding. [Mother] is on active duty in the United States Army and the residence of the minor children follows that of the custodial parent. That the Court has jurisdiction over the subject matter and the parties including the minor children.

The essential terms of the January 7th judgment were the same as those in the vacated December 6th judgment. Mother was granted sole legal and physical custody of the children; Father was granted reasonable visitation and ordered to pay $631 child support per month; and the court divided the parties' property and debts in an identical fashion. After entry of this new default judgment, Father did not file a motion requesting that the judgment be vacated or set aside. Instead, he appealed directly from the January 7th judgment itself.

## II. Discussion and Decision

As noted above, Father is directly appealing from the January 7th default judgment without having first filed a motion to set aside or vacate that judgment. Father's attempt to do so presents us with an issue concerning our jurisdiction over this appeal, which we have a duty to determine *sua sponte*. *Treetop Village Property Owners Ass'n v. Miller*, 139 S.W.3d 595, 599–600 (Mo.App.2004); *State ex rel. Anderson v. Anderson*, 186 S.W.3d 924, 925 (Mo.App.2006).

Our review of the relevant law on this subject begins with *Green v. Green*, 623 S.W.2d 265 (Mo.App.1981). There, the husband directly appealed from a default judgment in a dissolution action. Because husband had not filed a post-trial motion to set the judgment aside, the Eastern District declined to review the husband's arguments that certain procedural improprieties rendered the judgment defective. *Id.* at 266. Nevertheless, the appellate court did address husband's contention that there was insufficient evidence to support the trial court's division of the marital property. The court did so because "Section 452.330 RSMo 1978 requires the trial court to make a just division of marital property. This statutory obligation is not dependent upon whether the dissolution is contested, uncontested, or as in this case,

---

4. *See* n. 3, *supra*.

5. Father asked for leave to file an answer out of time, but that request was denied by the court.

by default." *Id.* The case was reversed and remanded because no evidence had been presented below concerning the value of husband's pension and profit-sharing plans. *Id.* at 267–68.

In *Blackmore v. Blackmore,* 639 S.W.2d 268 (Mo.App.1982), the Eastern District was again confronted with an attempt by a husband to directly appeal from a default judgment entered in a dissolution action without having filed a motion to have the judgment set aside. The court dismissed husband's appeal for lack of appellate jurisdiction:

> Is a default judgment appealable in the absence of a motion to set aside or vacate the judgment? This court rules it is not and dismisses the appeal. The general rule is that an appeal may not be taken from a default judgment unless there was a prior motion in the trial court. The reason for the rule is to allow the trial court an opportunity to pass on a ground which it may not have previously considered. An exception is made to the general rule where on appeal, the party against whom default was entered raises a question of subject matter jurisdiction or the sufficiency of the petition.

*Id.* at 269 (citations omitted).

This Eastern District default judgment trifecta culminated in *Vonsmith v. Vonsmith,* 666 S.W.2d 426 (Mo.App.1983). There, the husband appealed from a default judgment in a dissolution action without having filed a motion to set aside or vacate the judgment. Citing *Blackmore,* Judges Reinhard and Crandall held that the appellate court only had jurisdiction to review the fifth of husband's six points; that point alone presented an issue of the

trial court's subject matter jurisdiction. *Id.* at 427–28. The majority reversed that part of the judgment awarding a car to wife because it exceeded the prayer for relief in her petition and was, therefore, beyond the trial court's subject matter jurisdiction to grant. *Id.* at 428 n. 3. In Judge Crist's dissenting opinion, he noted that the majority opinion was inconsistent with *Green,* which held that § 452.330 permits a direct appeal from a default judgment in a dissolution action. *Id.* at 429. All three judges voted to transfer the case to the Supreme Court of Missouri. *Id.* at 430.

On transfer, the Supreme Court resolved the issue in the following fashion: "Judges Reinhard and Crandall held the view that no appeal lay from the default judgment because no motion to set aside or vacate had been filed. *See Blackmore v. Blackmore,* 639 S.W.2d 268 (Mo.App. 1982). Judge Crist dissented.... We hold that a default judgment is not appealable in the absence of a motion to set aside or vacate." *Vonsmith v. Vonsmith,* 666 S.W.2d 424, 424 (Mo. banc 1984).[6] Thus, it appears that this decision by the Supreme Court implicitly overruled *Green,* which had allowed a direct appeal from a dissolution action to challenge the evidentiary sufficiency of the property division without a motion to set aside or vacate first having been filed.

Once the jurisdictional issue was resolved, the Supreme Court transferred the case back to the Eastern District. *Vonsmith,* 666 S.W.2d at 425. On retransfer, the Eastern District reinstated its original opinion. *Vonsmith v. Vonsmith,* 666 S.W.2d 426, 430 (Mo.App.1983). The only aspect of husband's direct appeal which

---

**6.** In *Barney v. Suggs,* 688 S.W.2d 356 (Mo. banc 1985), the Supreme Court reaffirmed its earlier holding in *Vonsmith* with one significant refinement: the motion to vacate the underlying default judgment must be timely filed in order to confer jurisdiction upon an appellate court to engage in direct appellate review. *Id.* at 358.

the Eastern District ultimately reviewed was his challenge to the trial court's subject matter jurisdiction. The balance of husband's appeal was dismissed. *Id.* at 428.

▮▮▮ Read together, we believe the two *Vonsmith* opinions stand for this proposition: a party may not directly appeal from a default judgment without filing a motion to set aside or vacate the judgment, other than to present questions concerning the trial court's subject matter jurisdiction or the sufficiency of the plaintiff's petition. *Vonsmith,* 666 S.W.2d at 424; *Vonsmith,* 666 S.W.2d at 427–28. All three appellate districts have interpreted the *Vonsmith* opinions as adopting these exceptions to the general nonappealability rule. *See, e.g., Great American Acceptance Corp. v. Zwego,* 902 S.W.2d 859, 863 (Mo.App.1995); *Jones v. Chrysler Corp.,* 731 S.W.2d 422, 430–31 (Mo.App.1987); *Financial Design Consultants, Inc. v. McCarver,* 712 S.W.2d 738, 739–40 (Mo. App.1986); *Stewart v. Stewart,* 670 S.W.2d 93, 93 (Mo.App.1984). In the case at bar, the January 7th judgment was a default judgment because it resulted from Father's failure to answer the petition and his consequent exclusion from participation at trial, except as to jurisdictional issues. *See Weidner v. Anderson,* 174 S.W.3d 672, 679 (Mo.App.2005). Father's third point on appeal questions the sufficiency of the evidence to support the court's division of the parties' property and debts. If Father had filed a timely motion to set aside or vacate this judgment, he could have sought trial court review of this issue and thereby preserved his right to a direct appeal if the court refused to grant relief. *See State ex rel. Div. of Family Services v. Bullock,* 904 S.W.2d 510, 513 (Mo.App.1995); *Smead v. Granger,* 684 S.W.2d 573, 573–74 (Mo.App. 1984). Because Father did not do so, we lack appellate jurisdiction over Father's

third point and must dismiss this aspect of his appeal. *See Stewart,* 670 S.W.2d at 93. The first two points in Father's brief, on the other hand, challenge the trial court's subject matter jurisdiction to adjudicate the issues of child custody and child support. Lack of subject matter jurisdiction can be challenged in a direct appeal from a default judgment. *Vonsmith,* 666 S.W.2d at 427–28; *Blackmore v. Blackmore,* 639 S.W.2d 268, 269 (Mo.App.1982). Therefore, we do have jurisdiction to reach the merits of these points, which we will address in turn.

*Point I—Subject Matter Jurisdiction Pursuant to the UCCJA*

▮▮▮ In Father's first point, he contends the trial court lacked subject matter jurisdiction pursuant to Missouri's version of the UCCJA (§§ 452.440–.550) to adjudicate the issue of child custody. We engage in *de novo* review of jurisdictional matters. *Bounds v. O'Brien,* 134 S.W.3d 666, 670 (Mo.App.2004). A trial court's jurisdiction under the UCCJA to hear custody matters is described as "subject matter jurisdiction," which must be based upon circumstances existing at the time the court's jurisdiction is invoked. *Pirisky v. Meyer,* 176 S.W.3d 145, 146 (Mo. banc 2005). Such jurisdiction cannot be predicated upon the doctrine of waiver or conferred by the consent of the parties. *Id.; Lavalle v. Lavalle,* 11 S.W.3d 640, 651 (Mo.App.1999). In this case, Mother bears the burden of establishing a *prima facie* basis of jurisdiction pursuant to the UCCJA, as she is the proponent of that jurisdiction. *In re Marriage of Dooley,* 15 S.W.3d 747, 755 (Mo.App.2000).

▮▮▮ "The primary purpose of the UCCJA is to ensure that custody determinations are made in accordance with, and in the state best suited to provide for, the welfare and best interests of the child."

*Bell v. Bell,* 987 S.W.2d 395, 398 (Mo.App. 1999). To that end, the UCCJA is purposely designed "to ensure that a child's custody determination is made in the state with which the child and his family are most closely connected and where the most significant evidence concerning the child's custody is available. . . ." *State ex rel. In Interest of R.P. v. Rosen,* 966 S.W.2d 292, 299 (Mo.App.1998).

Section 452.450.1 sets out the four alternative jurisdictional bases that exist under the UCCJA. If a court is otherwise competent to decide a child custody matter, this statute grants the court subject matter jurisdiction to do so if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mis-

treatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

The comments to the UCCJA make it clear that the bases of jurisdiction in paragraphs (1) through (4) of § 452.450.1 are set out in descending preferential order and that the first two bases for jurisdiction, home state and significant connection with family, establish the two major bases for jurisdiction. *In re Marriage of Dooley,* 15 S.W.3d 747, 755 n. 7 (Mo.App.2000); *Bell,* 987 S.W.2d at 398; UCCJA § 3 cmt, 9 U.L.A. 308 (1999).

Our review of this case is hampered by the fact that the trial court did not specifically articulate which of the four potential bases furnished jurisdiction in the case at bar. "It is implicit in the UCCJA that the trial court is to make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody." *State ex rel. Dept. of Social Services, Div. of Child Support Enforcement v. Hudson,* 158 S.W.3d 319, 323 (Mo.App.2005). Based upon the court's statement in the judgment that the children had been "residents" of Missouri for more than 90 days prior to the commencement of Mother's dissolution proceeding, we infer that the court believed such "residency" was sufficient to make Missouri the children's home state. Father, on the other hand, argues that § 452.450.1(1) identifies Virginia as the children's home state. We agree.

If the Missouri General Assembly had intended for home state jurisdiction under the UCCJA to be based upon legal residence or domicile, we believe those technical terms would have been used in § 452.445(4). Instead, "[h]ome state" is defined in that subsection as "the state in which, immediately preceding the filing of custody proceeding, the child lived with ... a parent ... for at least six consecutive months...." The phrase "lived with" is a commonplace term having no technical meaning, and it means literally what it says. It refers to the child's physical presence in a state without regard for the child's legal residence or domicile.

The Missouri cases which have conducted a "home state" analysis under the UCCJA by examining where the child has actually, physically lived are legion. *See, e.g., Krasinski v. Rose*, 175 S.W.3d 202, 205 (Mo.App.2005); *Reisinger v. Reisinger*, 125 S.W.3d 879, 882 (Mo.App.2004); *Reed v. Reed*, 62 S.W.3d 708, 713 (Mo.App. 2001); *In re Marriage of Dooley*, 15 S.W.3d 747, 757 (Mo.App.2000); *Bell v. Bell*, 987 S.W.2d 395, 398–99 (Mo.App. 1999); *State ex rel. Wilson v. Brown*, 897 S.W.2d 171, 176 (Mo.App.1995); *Elbert v. Elbert*, 833 S.W.2d 884, 887 (Mo.App.1992); *Lydic v. Manker*, 789 S.W.2d 129, 131 (Mo.App.1990); *Dobyns v. Dobyns*, 650 S.W.2d 701, 706 (Mo.App.1983); *Timmings v. Timmings*, 628 S.W.2d 724, 726 (Mo.App.1982). Moreover, appellate courts in other states which have adopted the UCCJA also interpret "home state" as referring to the state of the child's actual physical presence, rather than the state of the child's legal residence or domicile. *See, e.g., McCabe v. McCabe*, 600 So.2d 1181, 1185–86 (Fla.Ct.App.1992); *Harper v. Landers*, 180 Ga.App. 154, 348 S.E.2d 698, 700–01 (1986); *Brenner v. Cavin*, 163 Ga.App. 694, 295 S.E.2d 135, 136–37 (1982); *Gusman v. Gusman*, 598 So.2d 1256, 1258 (La.Ct.App.1992); *Hangsleben*

*v. Oliver*, 502 N.W.2d 838, 843 (N.D.1993); *Bergstrom v. Bergstrom*, 271 N.W.2d 546, 550 (N.D.1978); *In the Matter of Consford*, 271 A.D.2d 106, 711 N.Y.S.2d 199, 204–05 (2000); *In re C.A.D.*, 839 P.2d 165, 173 n. 42 (Okla.1992). In the case at bar, the evidence is undisputed that the children have lived in Ft. Belvoir, Virginia, since September 2002. Mother acknowledged that fact in her petition, which stated that the "children are presently residing in the actual custody of [Mother] in Fort Belvoir, Virginia." Thus, Virginia would be considered the home state of the minor children under § 452.450.1(1). *See Krasinski v. Rose*, 175 S.W.3d 202, 205 (Mo.App.2005).

Mother argues that, even if Missouri is not the children's home state, the trial court properly assumed jurisdiction under the UCCJA pursuant to § 452.450.1(2). This statutory provision authorizes a court of this state to assume jurisdiction, if it is in the best interest of the child to do so, when: "(a) [t]he child and his parents, or the child and at least one litigant, have a significant connection with this state; and (b) [t]here is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]" It is important to point out, however, that this jurisdictional basis may only be utilized in place of home state jurisdiction if "the child and his family have equal or stronger ties with another state...." *Bell v. Bell*, 987 S.W.2d 395, 398 (Mo.App.1999). Mother argues it is in the children's best interests to determine custody in this dissolution action because of her connections to Missouri (i.e., it is the domicile of Mother and her parents, as well as the place where she plans to retire). Mother claims this meets the requirement that there be available in this state "substantial evidence regarding the child's present or future care, protec-

tion, training, and personal relationships" as required by § 452.450.1(2)(b).

Mother's argument is misdirected because all this evidence would establish is Mother's connection to this state. It sheds virtually no light on the issues pertinent to the children. *See Timmings v. Timmings*, 628 S.W.2d 724, 726–27 (Mo.App.1982). While it might be convenient for Mother to determine custody in Missouri in conjunction with her dissolution action, the children have never lived here. Virginia is the state where the children have "optimum access to relevant evidence about the child and family" and "maximum rather than minimum" contacts with those providing care, protection, training, and personal relationships for the children. *Id.* at 727; § 452.450.1(2)(b). Specifically, Virginia is the state where substantial evidence can be found concerning: (1) Mother's allegations that children were abused by Father; (2) the nature of the children's relationship with Father; (3) the children's medical and mental health conditions; (4) their schooling; (5) their receipt of state services; (6) their activities in their home community; and (7) their friendships with other children. This is the type of substantial evidence concerning "the child's present or future care, protection, training, and personal relationships" that is contemplated by § 452.450.1(2). *See, e.g., Krasinski v. Rose*, 175 S.W.3d 202, 205–06 (Mo.App. 2005); *In re Marriage of Dooley*, 15 S.W.3d 747, 758 (Mo.App.2000); *Payne v. Weker*, 917 S.W.2d 201, 204–05 (Mo.App. 1996). Therefore, we conclude that determining custody in Missouri is not in the best interests of the children under § 452.450.1(2).

In so holding, we are guided by the following comment to UCCJA section 3:

Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction.

UCCJA § 3 cmt, 9 U.L.A. 309 (1999) (italics in original); *see Timmings*, 628 S.W.2d at 726–27; *Payne*, 917 S.W.2d at 204. We found further support for our conclusion in the factually similar case of *Gusman v. Gusman*, 598 So.2d 1256 (La.Ct.App.1992). There, the father, serving in the United States Coast Guard, sought to have a Louisiana court determine custody because that state was where the father maintained a home, planned to retire and had a number of relatives. *Id.* at 1258. The Louisiana appellate court upheld the trial court's determination that it was in the best interests of the children for Virginia to assume jurisdiction because that was the state where the children were living, attending school and forming friendships. *Id.*

We have not ignored Mother's contention that *Edwards v. Edwards*, 709 S.W.2d 165 (Mo.App.1986), supports her argument, but that case is distinguishable. There, the mother was also in the military

and maintained a Missouri domicile. Her dissolution petition was dismissed for lack of subject matter jurisdiction. It appears that the trial court erroneously believed that the mother was not a "resident" of Missouri so as to confer jurisdiction upon the court to grant her a dissolution. *Id.* at 167. As the Eastern District correctly pointed out, "residence of one in military service generally remains unchanged though he or she may be stationed in the line of duty at a particular place even for a period of years." *Id.* at 168. That holding related only to the issue of the mother's residency in Missouri. The Eastern District also held that the trial court erred in dismissing mother's petition insofar as it sought to have the court adjudicate the issue of child custody. In that regard, the appellate court noted:

> Petitioner has further pleaded there is substantial evidence concerning her son's future care, protection, training, and personal relationships to be found in Missouri. Because the fact of petitioner's Missouri domicile is well-pleaded, and because nothing in respondent's motion or supporting affidavit contradicts petitioner's assertions about her son, it appears the circuit court has jurisdiction to determine the issue of child custody in this action.

*Id.* Thus, the true import of *Edwards* is simply that the mother's petition was sufficient to withstand dismissal on grounds of lack of subject matter jurisdiction pursuant to § 452.450.1(2). In the case at bar, *Edwards* is of no assistance to Mother. We are not dealing with a pleading issue, but rather uncontroverted evidence at trial which convincingly demonstrated the absence of substantial evidence in Missouri concerning the children's future care, protection, training and personal relationships.

Finally, we note that Mother does not contend, and we do not discern, that there was any evidence before the trial court which would have authorized it to exercise jurisdiction pursuant to the third or fourth bases set out in § 452.450.1(3)-(4). As to the former, there was no evidence that the children were physically present in Missouri or that the necessary jurisdictional prerequisites of abandonment or emergency were satisfied. As to the latter, Virginia would have jurisdiction under prerequisites substantially similar to § 452.450.1(1)-(3). *See* Va.Code § 20-146.12 (2006). There was no evidence that Virginia had declined to exercise jurisdiction over the children. Indeed, the protective order attached to Mother's dissolution petition demonstrates that Virginia could exercise jurisdiction and would likely do so if requested. Therefore, the trial court would not have been justified in relying upon this default jurisdictional provision. *See Reed v. Reed,* 62 S.W.3d 708, 715 (Mo.App.2001).

In conclusion, Mother failed to present sufficient evidence to establish a *prima facie* basis for subject matter jurisdiction under the UCCJA. Therefore, the trial court lacked jurisdiction pursuant to § 452.450.1 to decide the issue of the children's custody. *See Krasinski v. Rose,* 175 S.W.3d 202, 206 (Mo.App.2005); *Reed,* 62 S.W.3d at 715. "A judgment issued in excess of the trial court's jurisdiction is void." *In re Moreau,* 161 S.W.3d 402, 405 (Mo.App.2005). Thus, the portions of the January 7, 2005 judgment regarding child custody and visitation are null and void. *See Mahoney v. Mahoney,* 162 S.W.3d 512, 514 (Mo.App.2005); *Love v. Love,* 75 S.W.3d 747, 754-55 (Mo.App.2002). Father's first point is granted.

*Point II—Subject Matter Jurisdiction to Adjudicate the Issue of Child Support*

■ In Father's second point, he contends that, because the trial court lacked

jurisdiction under the UCCJA to adjudicate the issue of child custody, the court also lacked subject matter jurisdiction to enter an award of child support. Respondent counters that the trial court had jurisdiction pursuant to § 452.340 RSMo Cum.Supp. (2005) to award child support without regard to whether the trial court had jurisdiction to enter a custody order. As before, we review this jurisdictional matter *de novo*. *Bounds v. O'Brien*, 134 S.W.3d 666, 670 (Mo.App.2004).

As we explained in *Roy v. Nicks*, 125 S.W.3d 399 (Mo.App.2004), a trial court which is validly determining custody under the UCCJA also has the authority to adjudicate the issue of child support as an incident to the custody determination, provided the requirements of § 452.460 are met and the adjudication of support is in the child's best interest. *Id.* at 401–03; *see also Elbert v. Elbert*, 833 S.W.2d 884, 888 (Mo.App.1992); *Upchurch v. Upchurch*, 767 S.W.2d 629, 630 (Mo.App. 1989); *Nocito v. Nocito*, 670 S.W.2d 181, 181–82 n. 1 (Mo.App.1984); § 452.445(1). In other words, the ancillary jurisdiction necessary to adjudicate child support flows from the subject matter jurisdiction first furnished by the UCCJA to determine custody. *See McKinnon v. McKinnon*, 896 S.W.2d 90, 91 (Mo.App.1995); *Adams v. Adams*, 871 S.W.2d 105, 108 (Mo.App. 1994). When subject matter jurisdiction under the UCCJA is absent, a trial court does not have jurisdiction to adjudicate child support. *See Krasinski v. Rose*, 175 S.W.3d 202, 206 (Mo.App.2005); *Reed v.*

*Reed*, 62 S.W.3d 708, 715 (Mo.App.2001); *In re Marriage of Dooley*, 15 S.W.3d 747, 758 (Mo.App.2000). Father's second point is granted.

### Conclusion

For the reasons explained above, Father's third point on appeal is dismissed because we lack appellate jurisdiction to review the issue presented in that point via direct appeal. We do have appellate jurisdiction to review Father's first and second points, however, since they present issues relating to the trial court's subject matter jurisdiction. We hold that the trial court lacked subject matter jurisdiction under the UCCJA to adjudicate the issues of child custody, visitation and child support. Therefore, the portions of the judgment dealing with these issues are null and void. The case is remanded to the trial court with instructions to vacate the judgment as it relates to the issues of child custody, visitation and child support and to decline jurisdiction to adjudicate these issues under the UCCJA. *See Reed*, 62 S.W.3d at 715.

SHRUM, P.J., and BARNEY, J., Concur.