In the ESTATE OF Barbara SHAW, Deceased.

Stephen Earl Bennett, Respondent.

No. SC 89016.

Supreme Court of Missouri, En Banc.

June 24, 2008.

Francis X. Duda, Dennis S. Harms, Anderson & Gibert, St. Louis, for Appellee.

W. Edward Reeves, Ward & Reeves, Caruthersville, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Individuals claiming to be heirs at law of Barbara Shaw, deceased, appeal the circuit court's denial of their motion to set aside the court's nunc pro tunc order and its distribution order III, both entered on January 25, 2007. Before reaching the merits of the issues raised in the appeal, this Court must determine its own jurisdiction. The court had entered an earlier distribution order (distribution order II) on July 27, 2006. As set out below, the court lost jurisdiction of this case no later than November 6, 2006, when all after-trial motions regarding the July 27, 2006 order were deemed overruled as a matter of law. And the copy of the July 27, 2006 order on which the judge's signature was crossed out was not effective as it was undated and the record does not reflect it was filed or served on the parties. The court, therefore, was without authority to enter the December 5, 2006 judgment, the nunc pro tunc order correcting the December 5, 2006 judgment, and distribution order III. Accordingly, this Court has jurisdiction on appeal only to confine the court to its jurisdiction by ordering it to reinstate its July 27, 2006 judgment, which is now final,

and vacate its other orders entered thereafter. The merits of distribution order II not having been timely appealed, and the December 5, 2006 judgment and the January 25, 2007 nunc pro tunc order and distribution order III being void, this Court does not reach the merits of the other issues raised by the parties. Remanded with directions.

### Factual and Procedural Background

Three distribution orders were entered by the court in the Shaw Estate. The parties do not assert that distribution order I is a valid order of distribution, and it is not. Although signed by the court, under section 473.590,[1] distribution order I was set aside upon the filing of timely objections and is of no effect. *In re Mills' Estate*, 349 Mo. 611, 162 S.W.2d 807, 811 (1942).

It is the third distribution order that the appellants challenge on appeal, along with a nunc pro tunc order, both entered on January 25, 2007. They also aver that the court erred because there is clear and convincing evidence that they are heirs at law of the decedent, Barbara Shaw, and are entitled to a share of the distribution of her estate. Personal representative Stephen Bennett argues that this Court should not consider the merits of these claims of error since they appeal the court's order denying their motion to set aside the nunc pro tunc order and distribution order III, claiming both that the order is not a final, appealable judgment and the appeal is untimely.

While not persuaded by these arguments, this Court agrees that it is necessary to determine when there was a final, appealable judgment in the case and whether a timely appeal was filed. *Committee for Educational Equality v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994) (the Court, *sua sponte*, must determine its own jurisdiction of an appeal). Based on the procedural history of this case, the inquiry should include consideration of whether distribution order II constitutes the final judgment governing the parties' rights, triggering the time for appeal. In considering which of the court's orders constitutes the final, appealable judgment, it is important to examine what events occurred, and when they occurred, during the administration of the Shaw Estate.

The proceedings in the court were rather convoluted and complicated, so the following timeline is given to illuminate the pertinent history:

**February 18, 2005**

Barbara Lou Shaw dies intestate.

**March 8, 2005**

Application for letters of administration and appointment of personal representative Stephen Earl Bennett.

**March 13, 2006**

Bennett files affidavit of publication, petition for approval of final settlement, and order of distribution I.

**March 23, 2006**

Objections to the petition for approval of distribution order I are filed.

**April 19, 2006**

---

1. All statutory references are to RSMo 2000. Section 473.590 states in relevant part:

Within twenty days after the filing of the final settlement and petition for distribution ..., any interested person may file written objections thereto.... The objections must be in writing and clearly state the specific grounds of objection and the modification de-

sired. If no objections are filed, the court may approve the final settlement and order distribution as prayed, without hearing if it deems such action proper. If objections are filed, or if the court does not deem it proper to approve the final settlement and order distribution as prayed without hearing, a hearing on the matter shall be had.

Bennett's attorney sends letter to the clerk in the probate division advising her to cancel the scheduled hearing on the objections because he would be withdrawing distribution order I and related documents.

**July 6, 2006**

Bennett files petition for approval of distribution order II and affidavit of publication.

**July 27, 2006**

Court approves and files distribution order II after 20 days have elapsed without objections being filed.

**August 7, 2006**

Objections to distribution order II filed.

**November 28, 2006**

Hearing on objections to approved distribution order II and matter taken under advisement.

**December 5, 2006**

Court overrules objections and enters judgment affirming "original" distribution order "tendered for filing on or about the 6th day of July, 2006." Court directs Bennett's attorney to file, within 15 days, a revised final settlement and distribution order "to reflect changes, if any, to the property of the Estate since the initial proposed Final Settlement was filed."

**January 19, 2007**

Bennett files proposed distribution order III.

**January 25, 2007**

Docket entry: "December 5, 2006 Judgment corrected nunc pro tunc to reflect the correct date of the original final settlement approval, finding and decree of heirship, succession and distribution, filed on March 13, 2005. . . . Order Approving Final Settlement." [(distribution order III)]

**February 26, 2007**

Motion filed to set aside the January 25, 2007 orders.

**April 9, 2007**

Hearing on motion to set aside. Order overruling motion entered.

**April 17, 2007**

Notice of appeal filed.

**Other Orders.** In the court file, there is a copy of proposed distribution order I that is signed, but undated. There is no docket entry reflecting when distribution order I was signed and filed.[2] In addition, two of the judgments set out in the timeline were later modified by interlineations. On the face of the July 27, 2006 judgment (distribution order II), the signature of the judge is crossed out and a handwritten notation appears, stating, "This Final Settlement was erroneously signed. WKC /s/ W. Keith Currie". The notation and signature are not dated, nor is the notation entered in the case record. Another handwritten notation was made on the face of the December 5, 2006 judgment. On that judgment, the date "July 6th" is crossed out and a handwritten notation "March 13th/WKC" is written in. Although the handwritten notation was not dated, the modification is consistent with the January 25, 2007 docket entry, stating that a nunc pro tunc order was entered to correct the December 5, 2006 judgment.

## Distribution order II was final and appealable

█ In determining when a final, appealable judgment was entered by the court, the court's distribution orders are

---

**2.** Because, under section 473.590, the filing of objections precluded approval of distribution order I, it is not necessary to address the court's failure to date distribution order I or the fact that there was no docket entry reflecting the filing of the order.

considered in chronological order. As noted previously, distribution order I was a nullity upon the filing of timely objections. Distribution order II was then entered on July 27, 2006. No objections were filed within the 20–day period permitted by section 473.590. Therefore, the July 27, 2006 filing became a judgment. That judgment by law became final and appealable 30 days thereafter, see Rule 81.05, unless an authorized after-trial motion was filed that delayed its finality. The parties do not cite any authority showing that the objections filed August 7, 2006, constitute an authorized after-trial motion; the filing of these objections would, thus, not seem to have any effect on the judgment's finality. Even were the objections construed as an authorized after-trial motion, however (a matter which this Court does not decide), such an authorized motion is automatically overruled if not ruled on within 90 days. Rule 78.06.

Here, the court did not purport to overrule the objections until December 5, 2006, well after the 90–day period had expired on November 6, 2006. The court had no authority to extend the 90–day limit for ruling. *Heinen v. Healthline Management, Inc.*, 982 S.W.2d 244, 246 (Mo. banc 1998). Appellants had ten days from November 6, 2006, to file a notice of appeal. Rule 81.04. They did not do so.

While, at some point, the judge crossed out his signature on the copy of the July 27, 2006 distribution order II in the court record, that action was not effective to vacate this final judgment. A judge is permitted to accept papers to be filed, but the filing date is to be noted thereon. Rule 43.02(b). Here, that was not done. While the legal file contains both a copy of the original judgment filed on July 26, 2006, and the modified judgment that is identical in every respect except for the striking out of the signature and the handwritten notation, the modified judgment does not have a second file stamp and there is no entry on the case record that would indicate that the modified judgment was filed with the clerk of the circuit court, as required by Rule 43.02(b). Further, the record fails to indicate service on the parties as required by Rule 74.03. The numerous procedural irregularities reflected by the record preclude consideration of the crossing out of the judge's signature as a valid action taken by the court.[3]

Once the July 27, 2006 judgment became final, the court was not permitted to alter it.[4] *Crockett Oil Co. v. Effie*, 374 S.W.2d 154 (Mo.App.1964). It is the order that governs the rights of the parties, and any later orders are a nullity. To the extent that appellants raise issues relating to orders entered after the July 27, 2006 order,

---

**3.** Because the defect in the court's attempt to vacate the July 27, 2006 distribution order is the failure to properly enter such action in the record prior to distribution order II becoming a final, appealable judgment, the court's action would still be a valid action if it were a proper nunc pro tunc order. The record does not support that it was, however, because, "for a nunc pro tunc correction to be valid it must be supported by some writing in the record which establishes that the judgment entered is not in fact the judgment rendered" and was, instead, a clerical error. *Wiseman v. Lehmann*, 464 S.W.2d 539, 542 (Mo.App. 1971). There is nothing in the record to support the conclusion that the court was correcting a clerical mistake, rather than a judicial error that is not subject to correction by a nunc pro tunc order. *Id.*

**4.** Although the court would have retained jurisdiction to enter a valid nunc pro tunc order, the nunc pro tunc order it attempted to enter on January 25, 2007, was a correction of the December 5, 2006 judgment, which was entered after it lost jurisdiction. If the court did not have jurisdiction to enter the judgment it was attempting to correct, it did not have jurisdiction to enter the nunc pro tunc order.

therefore, those orders are invalid and of no effect.

### This Court has jurisdiction of the appeal

 Although the court did not have jurisdiction to enter any orders after the July 27, 2006 distribution order II became final, this does not deprive this Court of jurisdiction to consider the appeal filed after the denial of appellants' motion to set aside the January 25, 2007 judgment (distribution order III) and the nunc pro tunc order. Indeed, were it not so, an appellate court would not have the ability to adjudicate whether a judgment is invalid because entered by a trial court when it did not have jurisdiction. The effect would be to leave the invalid judgment intact. Appellate courts inherently have supervisory authority to confine a trial court to its jurisdiction:

> While the language used in some of the cases is to the effect that where the trial court had no jurisdiction, the appellate court has none[, t]he better practice is to make clear that the appellate court has jurisdiction of the appeal but can not consider that appeal on its merits. It follows that this court has jurisdiction of this appeal but that its jurisdiction does not extend to a determination of the appeal on its merits unless the trial court had jurisdiction to determine the issues presented on their merits.

*Shepler v. Shepler,* 348 S.W.2d 607, 609 (Mo.App.1961) (citations omitted).

 Moreover, orders and decrees that are void, and not merely erroneous, will be considered colorable and subject to being reviewed and reversed on appeal. *See In re Marriage of Southard,* 733 S.W.2d 867, 869 (Mo.App.1987). In this case, the court purported to enter orders after it had lost the ability to do so. As such, those orders are invalid.

### Conclusion

The July 27, 2006 judgment is the final judgment in this case, and the cause is remanded with directions to the circuit court to vacate any orders entered after the July 27, 2006 judgment. *See In re Marriage of Miller,* 196 S.W.3d 683, 694 (Mo.App.2006) (trial court ordered to vacate orders in which it did not have subject matter jurisdiction).

All concur.