Steve **CHAPMAN**, Pat Chapman, and Judy Chapman, Chapman Dairy, Inc., Plaintiffs–Appellants/Respondents,

v.

**NEW MAC ELECTRIC COOPERATIVE, INC.,** Defendant–Respondent/Cross–Appellant.

Nos. 28428, 28448.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 27, 2008.

J. Michael Riehn, Cassville, MO, Scott Lawrence, St. Nazianz, WI, for Appellants/Respondents.

Michael P. Mergen, Springfield, MO, Denis Vogel, Madison, WI, for Respondent/Cross–Appellant.

NANCY STEFFEN RAHMEYER, Judge.

Steven Chapman, Pat Chapman, Judy Chapman, and Chapman Dairy, Inc. (collectively, "Appellants"), brought suit against their electric company, New Mac Electric Cooperative, Inc. ("Cross–Appellant"), for stray voltage, and against Alfa Laval Agri, Inc. ("Alfa Laval"), the company that designed and installed a new set of milking parlor equipment in 1997.[1] The jury found that Cross–Appellant had committed a nuisance and awarded economic damages in the amount of $1,675,349, and for inconvenience in the amount of $418,837. The trial court, in response to an after-trial motion filed by Cross–Appellant, reduced the damages in the amount of $793,017.25. We reverse the trial court's judgment and remand to the trial court to enter a judgment for damages in accordance with the jury verdict minus the

---

1. Appellants settled their claim against Alfa Laval for its involvement in causing the stray voltage problem at Appellants' farm. The settlement amount with Alfa Laval was $85,000, which was offset against Appellants' recovery by verdict and judgment against Cross–Appellant, pursuant to section 537.060 and upon stipulation of the parties. All references to statutes are to RSMo 2000, unless otherwise specified.

Alfa Laval offset as stipulated by the parties.

Appellants' original Petition in this matter was filed March 21, 2000, against Cross–Appellant and Alfa Laval. The Petition alleged that both defendants' activities caused damage to Appellants' dairy herd by exposing the herd to what is commonly called "stray voltage," "stray current" or "stray electricity." As to Cross–Appellant, the only theory of recovery in the original Petition was negligence; no demand for injunctive relief was set forth in the original Petition. The claims pled against Alfa Laval were breach of implied warranty, strict liability, and negligence.

Appellants' First Amended Petition was filed June 6, 2000. Overall, the series of events and causes of action pled and relief demanded were identical to those in the original Petition; however, the First Amended Petition attempted to elaborate upon specific defects in Cross–Appellant's system regarding an inadequate primary neutral conductor in the distribution system ending at Appellants' farm.

Appellants filed their Second Amended Petition on August 17, 2004. Appellants asserted an additional claim for temporary, abatable nuisance against Cross–Appellant and sought equitable relief of abatement as well as damages. All theories of recovery previously pled against both defendants were also pled in the Second Amended Petition. The factual allegations against Cross–Appellant remained the same as in the First Amended Petition. Additionally, Judy Chapman was added as a plaintiff, as she is a co-owner of the land where the nuisance was alleged to exist, although she is not an owner of the dairy business.

Appellants filed a Third Amended Petition on April 18, 2005. The theories of recovery pled and relief sought against both defendants were identical to the Second Amended Petition, but further specific factual allegations related to the deficiencies in Cross–Appellant's system, resulting in stray voltage, were added to the nuisance claim against Cross–Appellant.

Appellants' Fourth Amended Petition was filed November 21, 2005, for the sole purpose of adding Chapman Dairy, Inc., which had become the operating entity of the dairy while this litigation was pending, as a necessary party.

Prior to trial, Appellants moved for Partial Summary Judgment on Count V seeking "preliminary and permanent injunction" based in part on Appellants' willingness to pay for replacement of the approximately 1.7 miles of Cross–Appellant's 1947 power line in issue. The trial court denied the motion at the pre-trial conference on October 4, 2006. After being denied the relief requested, Appellants informed the court that they would proceed to trial solely on the nuisance count, abandoning their original negligence claim.[2]

Cross–Appellant also moved for a partial summary judgment on Appellants' nuisance claim to the extent they sought damages prior to March 21, 1990 (ten years prior to commencement of suit, the appropriate "look-back" period under the statute of limitations for temporary nuisance), and also to preclude any claim for future dam-

---

**2.** At the October 4, 2006 pre-trial conference, Appellants abandoned their original claim of negligence; however, there is no docket entry or transcript of this since the announcement occurred during a conference, which was not held on the record. Although we do not have the actual record of the events that transpired at the October 4, 2006 pre-trial conference, both parties include this information in their briefs and there is no disagreement; we accept the parties' statements regarding the events of the pre-trial conference as valid for purposes of providing background information only.

ages. Cross–Appellant did not assert in its motion that Appellants were not entitled to recover damages arising from a nuisance maintained during the "gap" between the original filing in 2000 and amendment of the pleadings in 2004. The trial court never entered a ruling on this motion on the record, but Appellants apparently concurred in the result sought, that damages for temporary nuisance were recoverable in this action only for the time period between March 21, 1990, and the time of trial.

The case was submitted to the jury on the theory of temporary nuisance. The parties stipulated to the form of the instructions and no objections were made regarding the instructions. Cross–Appellant did not offer a withdrawal instruction on the issue of damages. The jury returned a verdict in favor of Appellants, assessing both economic and inconvenience damages, totaling $2,094,186.

Cross–Appellant filed various after-trial motions, including a motion for new trial, or in the alternative for remittitur of damages awarded for the period from the commencement of the action on March 21, 2000 through August 17, 2004, based on Appellants' failure to make a claim for injunctive relief until 2004 when the amended pleading was filed. Appellants contended that the amended pleadings relate back to the original filing date of March 21, 2000, therefore the proper time period for damages included the gap period between the date the action was filed and the date injunctive relief was first pled. An additional claim for remittitur was filed based upon excessive and unreasonable damages. A hearing was conducted on December 5, 2006, on Cross–Appellant's motions as well as Appellants' Post–

Verdict Motions seeking injunctive relief and judgment on the verdict.[3]

By docket entry dated December 18, 2006, the court denied each of Cross–Appellant's motions, except the motion to reduce Appellants' recoverable damages between the date the action was filed and the date injunctive relief was first pled. That docket entry, in its entirety, provides as follows:

[Cross–Appellant's] motion for new trial is denied. Regarding other motions, Court notes that during pre-trial and trial discussions with counsel it was agreed that evidence of post-filing damages would be allowed. Parties did in fact submit evidence of post-filing damages without objection. Therefore, the jury heard evidence of damages from 1990 to September 2006.

It was understood by counsel that jury award would be subject to a remittiture [sic] if [Appellants] are not entitled to damages covering in excess of sixteen years.

Court reviews the issue of the nature of the nuisance and finds that the nuisance is temporary in nature and as such a 10 year statute of limitations applies.

Court further finds that [Appellants] did not file for injunctive relief until June 6, 2004.

As a general rule, where the nuisance is temporary or abatable, future damages may not be recovered because the nuisance may abate in the future. In the present case the nuisance, in theory, could have been abated through injunctive relief (from 2000–2004). Accordingly, Court finds [Appellants] are not entitled to damages from date suit was filed to date injunctive relief count was filed.

**3.** The parties settled the injunctive relief issue thereafter by Stipulation to Entry of Judgment for Abatement, which was incorporated into the Final Judgment.

Regarding the method to reduce the judgment the Court adopts [Appellants'] counsel's proposal. (See attached exhibit).

Accordingly, judgment for economic award is reduced as follows:

| $1,675,349 | Jury award |
| (634,414) | 75.5% of $840,283 |
| $1,040,935 | |

Finally, regarding inconvenience, Court notes that jury award for inconvenience was¼ of the economic damages. Court reduces inconvenience damage to $260,233.75.

Judgment is therefore ordered in favor of [Appellants] against [Cross–Appellant] for:

| $ 1,040,935.00 | |
| 260,233.75 | |
| $ 1,301,168.75 | |
| – 85,000.00 | Stipulated remittiture [sic] |
| $ 1,216,168.75 | |

Appellants and Cross–Appellant challenge the reduction of damages: Cross–Appellant contends that the trial court erred as a matter of law in its proposed "remittitur" because a correct remittitur would have allowed Appellants to elect a new trial or take the remitted damages;[4] Appellants assert the reduction in damages is error as a matter of law. We agree with both.

■ The trial court's "remittitur" was actually an attempt to remedy the failure to address an evidentiary question during the trial. Specifically, at trial, Appellants introduced testimony and exhibits, which addressed the damages caused by the nuisance and were received into evidence, many without objection by Cross–Appellant. Dr. Behr, an agricultural economist, testified, as Appellants' last witness in their case in chief. Cross–Appellant ob-

jected to the testimony of Dr. Behr and asserted for the first time that Appellants could not recover damages between the date of the initial filing in 2000, and the amended filing of August 17, 2004, claiming that Appellants failed to seek injunctive relief until the filing of the 2004 Amended Petition.

After a conversation on the record, outside the presence of the jury, the court took the objection under advisement and, recognizing the continuing objection to Dr. Behr's testimony, allowed the testimony. During the conversation in chambers, the court indicated that, after the evidence was heard and the court had an opportunity to review the relevant case law, it would make a ruling and "then consider either a withdrawal instruction at the end ... or a remittitur at the end of the case." Dr. Behr testified about the economic damages from April 1990 (ten years prior to the initial negligence filing) through the time of trial. The court never ruled on the admissibility of Dr. Behr's testimony. Cross–Appellant never tendered a withdrawal instruction. After the jury verdict, the trial court made a finding that Appellants were not entitled as a matter of law to recover damages for the "gap period" between 2000 and 2004 and, therefore, reduced the verdict to exclude the purported damages for that period.

■ The trial court's reduction of damages did not follow the procedure set out for remittitur in the statute, rule and case law for a remittitur. If the court was attempting to enter a remittitur, it was not done pursuant to section 537.068. The assessment of damages is primarily a function for the jury. *McCormack v. Capital Elec. Const. Co., Inc.,* 159 S.W.3d 387, 395

---

**4.** Cross–Appellant further claims that Appellants do not have a right of appeal because they provided the mathematical calculations for the amended judgment and, thus, are estopped from appealing from the judgment.

(Mo.App. W.D.2004). The trial court may enter a remittitur "if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." Section 537.068.

■ "Excessive verdicts generally arise in two situations: (1) when the jury makes an honest mistake in weighing the evidence as to the nature and extent of the injury and awarding disproportionate damages; and (2) when the jury is biased by trial misconduct to award grossly excessive damages." *McCormack,* 159 S.W.3d at 394–95. In the first instance, a remittitur is appropriate, thus allowing the plaintiff the option of accepting the judgment for the proper sum and avoiding further litigation. *Id.* at 394–95. The rationale has been stated thusly:

> "[W]here the jury errs by awarding a verdict which is simply too bounteous under the evidence, injustice may be prevented by ordering a remittitur. A new trial is not required because the jury is not guilty of misconduct, only an honest mistake as to the nature and extent of the injuries."

*Lindquist v. Scott Radiological Group, Inc.,* 168 S.W.3d 635, 647 (Mo.App. E.D. 2005) (*quoting Larabee v. Washington,* 793 S.W.2d 357, 360 (Mo.App. W.D.1990)). In the second instance, only a new trial is appropriate. *McCormack,* 159 S.W.3d at 395. Cross–Appellant did not request a new trial based upon trial misconduct which resulted in grossly excessive damages, thus the second situation of excessive verdicts is not before us.

In this case, it is important to note that the court denied Cross–Appellant's motion for a new trial. Cross–Appellant does not challenge that ruling in this appeal. Here, the trial court simply found that damages were unavailable from the date of filing of Appellants' initial Petition until the date the Petition was amended to include an equitable claim for abatement of a temporary nuisance because

> [Appellants] did not file for injunctive relief until June 6, 2004.
>
> As a general rule, where the nuisance is temporary or abatable, future damages may not be recovered because the nuisance may abate in the future. In the present case the nuisance, in theory, could have been abated through injunctive relief (from 2000–2004). Accordingly, Court finds [Appellants] are not entitled to damages from date suit was filed to date injunctive relief count was filed.

The court attempted a remittitur for damages for that period.

The trial court did not grant the purported remittitur in order to correct a verdict that exceeded the fair and reasonable compensation for Appellants' injuries. The trial court simply reduced the damages because of Cross–Appellant's claimed error in the admission of evidence. This is not an authorized use of a remittitur.[5]

■ "While the court does have the authority to correct or amend a verdict after discharge of the jury, the power is limited to matters of form and does not extend to matters of substance." *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.,* 615 S.W.2d 574, 581 (Mo. App. W.D.1981). The trial court cannot substitute its verdict for that of the jury. *Allison v. Mountjoy,* 383 S.W.2d 314 (Mo. App.K.C.1964). Although designated a re-

---

**5.** Additionally, as we noted in the procedural history, Cross–Appellant did not ask for a withdrawal instruction nor did it in any way object to the jury instructions. It simply filed a post-trial motion for a remittitur.

mittitur, the trial court's judgment was actually an attempt to make an evidentiary ruling by way of a reduction in damages.[6] We find that the court had no authority to reduce the damages in the manner that it did.[7]

■ In summary, "after a jury trial and verdict, discharge of jury and judgment entered, and upon motions for new trial, the court was powerless to substitute its own assessment of amount of recovery on either the petition or counterclaim." *Jaeger v. Agnew*, 252 S.W.2d 847, 849 (Mo. App.K.C.1952). The trial court's actions were in essence a substitution of its assessment as to the amount of recovery for that of the jury.[8] The court cannot, under the guise of amending the verdict, invade the province of the jury or substitute its verdict for the jury's verdict. *Allison*, 383 S.W.2d at 320. Although the trial court did not have the authority to enter the judgment with reduced damages, this Court has the inherent supervisory authority to confine a trial court to its proper authority. *See In the Estate of Barbara Shaw*, 256 S.W.3d 72, 77 (Mo. banc 2008).

We reverse the judgment and remand to the trial court with directions to reinstate the jury verdict and to enter a judgment in accordance therewith, less the appropriate stipulated offset from Alfa Laval.

LYNCH, C.J., BURRELL, J., concur.

---

6. Furthermore, the evidence at trial did not support the trial court's proportional method of reducing the damages in that there was no evidence that the damages were uniform each year or that a simple calculation decreasing the damages by a per year percentage would be appropriate.

7. We also reject Cross–Appellant's argument that Appellants acquiesced in the remittitur. A review of the transcript and the post-trial pleadings make it abundantly clear that Appellants did not agree with the grant of remittitur. Because the trial court was fashioning its own remedy for the allowance of the testimony of the expert, both parties made suggestions as to how to calculate the court's insistence in the reduction in damages. Appellants did not agree to a reduction of any of the damages and argued vehemently in opposition to the reduction.

8. In doing so, we would be remiss if we do not explain that the entire theory that improper evidence was admitted concerning dam-

ages between 2000 and 2004 was a bit convoluted. To arrive at that theory, it appears that the trial court believed that the nuisance claim in the Amended Petition filed in 2004 related back to 2000 because damages were allowed from 1990 through the date of trial, but apparently, the trial court found that the request for an injunction commenced in 2004. Cross–Appellant conceded that Appellant had the right to file for damages for the years between the initial filing of 2000 and the Amended Petition of 2004; Cross–Appellant simply claims that it must be done at a different trial than the first trial. We do not understand the rationale for such a finding. If Appellants had first filed their nuisance claim with the request for the injunction in 2004, then Appellants would have been allowed damages through the time of trial. It is difficult to understand how Appellants cannot have damages between 2000 and 2004 based on the filing of an Amended Petition.