Michael KETTEMAN, Respondent,

v.

Rachel KETTEMAN, Appellant.

No. WD 73205.

Missouri Court of Appeals, Western District.

Aug. 23, 2011.

Warren P. Wade, Kansas City, MO, for Appellant.

Heather R. Smith, Liberty, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Rachel Ketteman appeals from the circuit court's judgment dissolving her marriage to Michael Ketteman. In its judgment, the circuit court ordered Rachel Ketteman to pay child support of $278.00 per month and to pay certain marital debts. The circuit court also awarded the parties joint legal and joint physical custody of their son. Rachel Ketteman contends that the circuit court erred in asserting personal jurisdiction over her because the requirements of Missouri's long-arm statute were not satisfied and she lacked sufficient minimum contacts with the State of Missouri. Further, she asserts that the circuit court erred in entering an order of child custody because the Uniform Child Custody Jurisdiction Act (UCCJA) required that custody be determined by a court in Texas. Finally, Rachel Ketteman contends that the circuit court erred in failing to make findings of fact to support the determination that it had personal jurisdiction over her and that it had the authority to make a child custody determination under the UCCJA. We affirm in part and reverse in part.

Rachel Ketteman and Michael Ketteman were married in Texas on December 6, 2004. The parties' only child, a son, was born in Texas on June 9, 2005. The parties separated on April 8, 2007. In June 2007, Michael Ketteman moved from Texas to Missouri with his son. On September 6, 2007, Michael Ketteman filed a Petition for Dissolution of Marriage in the Circuit Court of Clay County.

On September 30, 2008, Clay County Family Court Commissioner Sherrill Roberts entered her Findings and Recommendations of Judgment of Dissolution of Marriage dissolving the marriage, granting Michael Ketteman sole legal and sole physical custody of his son, and ordering Rachel Ketteman to pay child support and a portion of the marital debts. Rachel Ketteman did not appear at the hearing, the Commissioner found her in default. On October 15, 2008, Rachel Ketteman's attorney filed a Special Entry of Appearance for the purposes of challenging subject matter jurisdiction and personal jurisdiction. On that same day, Rachel Ketteman filed a Motion for Rehearing pursuant to Rule 129.13 asserting that the court lacked subject matter jurisdiction under the UCCJA to enter a child custody order and that the court lacked personal jurisdiction over her and could not, therefore, enter any monetary judgment against her. On October 17, 2008, the Commissioner set aside her Findings and Recommendations of Judgment of Dissolution of Marriage.

On June 22, 2009, Rachel Ketteman filed her motion to dismiss for lack of jurisdiction and for *forum non conveniens* with the Clay County Circuit Court. Further, on July 30, 2009, Rachel Ketteman filed a petition for divorce in the District Court of Tarrant County, Texas. The Texas court, on July 31, 2009, issued a temporary restraining order against Michael Ketteman

and appointed Rachel Ketteman "temporary sole conservator" of the minor child. On August 5, 2009, Rachel Ketteman registered the Texas order with the Clay County Circuit Court. On August 6, 2009, the minor child was returned to Rachel Ketteman's custody.

Thereafter, on August 17, 2009, the District Court of Tarrant County, Texas, denied Rachel Ketteman's petition for divorce finding that neither the petition nor any of the attachments provided the court with adequate facts to support the requirements to exercise jurisdiction over the matter. The Texas court also dissolved the temporary restraining order on August 17, 2009.

On August 18, 2009, the Clay County Family Court Commissioner held a hearing on Rachel Ketteman's motion to dismiss for lack of jurisdiction. The Commissioner denied the motion to dismiss and appointed a guardian *ad litem*. The docket sheet reflects this entry regarding the denial of the motion to dismiss:

> Court conducts communication with Judge Catterton in Tarrant County, Texas. Based upon this communication, as well as all other relevant factors and law, [Rachel Ketteman's] Motion to Dismiss is denied. Missouri is determined to be the appropriate jurisdiction for determination of all matters presented by the pleadings[.]

On March 30, 2010, the Commissioner held a trial on the petition for dissolution. On June 22, 2010, the Commissioner entered her Findings and Recommendations of Judgment of Dissolution of Marriage. Thereafter, on August 12, 2010, Clay County Circuit Judge K. Elizabeth Davis, Administrative Judge of the Family Court, entered her judgment adopting and con-

firming the Commissioner's findings and recommendations. The circuit court also denied Rachel Ketteman's motion for rehearing on August 11, 2010. On August 30, 2010, Rachel Ketteman filed a motion to amend the judgment,[1] but the circuit court never expressly ruled on the Rule 78.07(c) motion.

In the judgment of dissolution of marriage, the circuit court awarded the parties joint legal and joint physical custody of their minor son. Further, the circuit court ordered Rachel Ketteman to pay child support of $278.00 per month and to pay a portion of the marital debts. Rachel Ketteman appeals.

■ In her first point on appeal, Rachel Ketteman asserts that the circuit court erred in asserting personal jurisdiction over her because the requirements of Missouri's long-arm statute were not satisfied and she lacked sufficient minimum contacts with the State of Missouri. In particular she asserts that, because she and Michael Ketteman never lived in lawful marriage in the State of Missouri, the circuit court lacked jurisdiction to subject her to an *in personam* judgment for child support and for payment of certain marital debts. We agree.

To obtain personal jurisdiction over a non-resident defendant, a plaintiff " 'must make a prima facie showing that 1) the cause of action arose out of an activity covered by Missouri's long-arm statute, . . . and 2) the defendant had sufficient minimum contacts with Missouri to satisfy the requirements of due process.' " *In re the Marriage of Berry,* 155 S.W.3d 838, 840 (Mo.App.2005) (citation omitted).

---

1. With her motion for rehearing, Rachel Ketteman also filed a motion to amend the judgment pursuant to Rule 78.07(c). The circuit court's ruling on Ketteman's motion for rehearing did not mention the motion to amend the judgment. Thus, Rachel Ketteman refiled the motion to amend the judgment pursuant to Rule 78.07(c) on August 30, 2010.

A dissolution of marriage action involves " 'an amalgam of contractual right and status.' " *Id.* (citation omitted). " 'Insofar as the proceeding affects certain contractual aspects of the marriage ... the action is *in personam* and requires personal service or presence of the other spouse for valid judgment.' " *Id.* (citation omitted). " 'Insofar as such a proceeding affects status only, the action is *in rem* or *quasi-in-rem* and requires only that the *res* be before the court upon proper notice.' " *Id.* (citation omitted). The court " 'must have jurisdiction over the person of the defendant to adjudicate a personal liability against him and must have jurisdiction over the thing, be it status or specific property, to affect the interest of defendant in that thing.' " *Id.* (citation omitted).

■ Therefore, a court "must have jurisdiction over the person of the defendant in dissolution of marriage proceedings to impose a general judgment *in personam* [.]" *Thompson v. Thompson,* 657 S.W.2d 629, 630–631 (Mo. banc 1983). Lack of personal jurisdiction precludes consideration of orders pertaining to maintenance, child support, attorney's fees, and division of property (not within the State). *Id.* at 631; *Berry,* 155 S.W.3d at 842.

Rule 54.06(b) sets forth the long-arm jurisdiction for dissolution of marriage actions. Rule 54.06(b) authorizes *in personam* jurisdiction over a person:

> [W]hether or not a citizen or resident of the state, who has lived in lawful marriage within this state, as to all civil actions for dissolution of marriage or for legal separation and all obligations arising for maintenance of a spouse, support of any child of the marriage, attorney fees, suit money or disposition of marital property, if the other party to the lawful marriage lives in this state or if a third party has provided support to the spouse or to the children of the marriage and is a resident of this state.

*See also* § 506.500.2, RSMo 2000. This rule "mandates compliance with the minimum contacts test by requiring that one whom the state would subject to an *in personam* judgment for maintenance, support, attorney's fees, suit money, or disposition of marital property must have 'lived in lawful marriage within this state.' " *Crouch v. Crouch,* 641 S.W.2d 86, 89 (Mo. banc 1982).

The parties in this case never lived in lawful marriage within the State of Missouri. Although the record established that Rachel Ketteman had passed through Missouri on trips to Indiana and Illinois, she never lived in Missouri. Her only other contacts with the State of Missouri were trips she made to Missouri to enforce the Texas court order. Such contacts were not sufficient minimum contacts to satisfy due process requirements. No evidence was presented establishing that Rachel Ketteman had sought employment in Missouri, that she had the intent to change her domicile to the State of Missouri, that the parties held themselves out to be husband and wife in Missouri, that they attempted to establish a home together in Missouri, or that they intended to re-establish their marriage relationship in Missouri. *See State ex rel. Phelan v. Davis,* 965 S.W.2d 886, 889 (Mo.App.1998). Thus, although the circuit court had jurisdiction over the status of the marriage and could dissolve it, it did not have personal jurisdiction over Rachel Ketteman to adjudicate and subject her to an *in personam* judgment for child support and division of marital property (not within the State). *Berry,* 155 S.W.3d at 842; *Thompson,* 657 S.W.2d at 631.

■ Michael Ketteman contends, however, that Rachel Ketteman waived her right to contest the circuit court's jurisdiction over her by failing to raise the issue of jurisdiction in her motion for leave to file

her answer out of time and by not raising the issue of jurisdiction at the time of trial.

Rachel Ketteman, however, challenged the circuit court's assertion of personal jurisdiction over her when the Family Court Commissioner found her in default and entered Findings and Recommendations of Judgment of Dissolution of Marriage dissolving the marriage, granting Michael Ketteman sole legal and sole physical custody of his son, and ordering Rachel Ketteman to pay child support and a portion of the marital debts. Rachel Ketteman's attorney filed a Special Entry of Appearance for the purpose of challenging subject matter jurisdiction and personal jurisdiction. Rachel Ketteman also filed a Motion for Rehearing pursuant to Rule 129.13 asserting that the court lacked subject matter jurisdiction under the UCCJA Act to enter a child custody order and that the court lacked personal jurisdiction over her and could not, therefore, enter any monetary judgment against her. Those findings and recommendations by the Commissioner were set aside. Rachel Ketteman then filed a motion to dismiss for lack of jurisdiction and for *forum non conveniens* with the circuit court. The Commissioner held a hearing and then denied that motion. Thereafter, the Commissioner held a trial on the petition for dissolution. On the day of trial, Rachel Ketteman filed a motion for leave to file an answer out of time pursuant to Rule 44.01, which the Commissioner granted. In her answer, Rachel Ketteman raised as affirmative defenses the circuit court's lack of personal jurisdiction over her and the lack of subject matter jurisdiction.

Michael Ketteman notes, however, that Rachel Ketteman actions were wholly inconsistent with her assertion that the court was without personal jurisdiction. In particular, he points out these actions by Rachel Ketteman:

(1) In her answer, Rachel Ketteman admitted that the minor child was in need of financial support from the parties and that if the parties could not agree on matters regarding the financial support of the minor child, then the court would be asked to consider the evidence and to make orders it deemed appropriate;

(2) In her answer, Rachel Ketteman admitted that the parties had acquired both marital and non-marital property which was subject to the orders of the court and that if a property settlement could be reached between the parties, the court would be asked to approve its terms and provisions, but if no agreement could be reached, the court would be asked to divide the marital property according to the law and to set aside to each party his or her non-marital property;

(3) In her prayer in the answer, Rachel Ketteman asked the court to determine child support and order that the child support be retroactive to the date of filing of the petition;

(4) At trial and in her prayer in the answer, Rachel Ketteman asked that the court enter an order adopting and finding that her proposed parenting plan was in the best interest of the child; and

(5) At trial, Rachel Ketteman asked that the property and debts be divided according to her Statement of Marital and Non–Marital Assets and Debts and asked that the court determine child support according the her Form 14.

■ Rachel Ketteman's actions were not inconsistent, however, given that she preserved her objection based upon personal jurisdiction. Although she submitted procedural requests to the court, she did so while continuously asserting the court's lack of personal jurisdiction over her. Once Rachel Ketteman raised her

objection to personal jurisdiction, such objection was preserved throughout the proceedings. *Berry*, 155 S.W.3d at 841. It is not necessary to stand on your jurisdictional challenges and refuse to participate in the proceedings to preserve your objections to jurisdiction. *See Greenwood v. Schnake*, 396 S.W.2d 723, 726 (Mo.1965) and *State ex rel. Steinhorn v. Forder*, 792 S.W.2d 51, 53 (Mo.App.1990).

We, therefore, conclude that the circuit court lacked personal jurisdiction over Rachel Ketteman and lacked jurisdiction to enter orders pertaining to child support and division of marital property. "A personal judgment entered against a party by a court lacking personal jurisdiction over that party is void." *Berry*, 155 S.W.3d at 842.

In her second point, Rachel Ketteman asserts that the circuit court erred in entering an order of child custody because the UCCJA required that custody be determined by a court in Texas. We disagree.

The circuit court's authority under the UCCJA "is usually determined as of the date of the commencement of the proceeding." *A.M.C.B. v. Cox*, 292 S.W.3d 428, 433 (Mo.App.2009). At the time of the commencement of these proceedings, the Missouri UCCJA was found at sections 452.440 to 452.550, RSMo, 2000.[2] Section 452.450.1 of the UCCJA provides that a court "has jurisdiction to make a child custody determination by initial or modification decree" if one of four prerequisites are met:

(1) Missouri is or was the child's "home state" within the last six months; (2) it is in the best interests of the child for Missouri to have jurisdiction because both evidence and a "significant connection" are in Missouri; (3) the child is physically present in Missouri and has been either abandoned or faces an emergency; or (4) no other state has jurisdiction. Section 452.450.1(1)–(4)[.]

*A.M.C.B.*, 292 S.W.3d at 433.

▪ Prior cases have declared that the provisions of the UCCJA must be met for Missouri courts to have subject matter jurisdiction over a child custody proceeding. *See Pirisky v. Meyer*, 176 S.W.3d 145, 146 (Mo. banc 2005); *In re the Marriage of Miller*, 196 S.W.3d 683, 689 (Mo. App.2006); and *State ex rel. Dept. of Soc. Serv. v. Hudson*, 158 S.W.3d 319, 323 (Mo. App.2005). Jurisdiction, however, emanates from our State and Federal constitutions. *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009). The UCCJA can neither add nor subtract from our courts' jurisdiction. The child of the marriage was within the *in rem* jurisdiction of the circuit court. The child of the marriage was also within the jurisdiction of the courts of Texas. The purpose of the UCCJA is not to confer or deprive either state of jurisdiction but to provide a uniform statutory framework so that courts with jurisdiction may determine which shall go forward with a particular case.[3] It prioritizes various interests to facilitate a determination of which of the various

---

2. L.2009 H.B. 481 repealed the Uniform Child Custody Jurisdiction Act, consisting of §§ 452.400 to 452.550, and adopted the Uniform Child Custody Jurisdiction and Enforcement Act, consisting of sections 452.700 to 452.930, which became effective on August 28, 2009.

3. This is the principle of comity referred to by the Missouri Supreme Court in *Hightower*

*v. Myers*, 304 S.W.3d 727, 733 (Mo. banc 2010). Further, this court has noted, "Among those objectives [of the UCCJA] are 'the avoidance of jurisdictional competition and conflict, cooperation among state courts, and the deterrence of abduction and other unilateral removals of children.'" *Schoenecke v. Schoenecke*, 230 S.W.3d 62, 67 (Mo. App.2007) (quoting *State ex rel. Laws v. Higgins*, 734 S.W.2d 274, 277 (Mo.App.1987)).

courts should exercise its jurisdiction and which should refrain from exercising its jurisdiction. It wisely also provides for a fail-safe provision to require a court with jurisdiction to exercise its jurisdiction. The statute is intended to minimize, if not eliminate, competing judgments from various states, each purporting to award custody resulting in confusion and waste not only for the parties but for various enforcement personnel of the states.

The Missouri Supreme Court emphatically declared in *Hightower v. Myers* that "the UCCJA provisions ... do not remove subject matter jurisdiction from the court." 304 S.W.3d at 733. Relying on its decision in *J.C.W.*, 275 S.W.3d at 252–53, the *Hightower* court noted that the circuit court has original jurisdiction over all civil cases and that, because a custody dispute under the UCCJA is a civil case, the circuit court has constitutionally vested subject matter jurisdiction over a UCCJA dispute. *Hightower*, 304 S.W.3d at 733. The Court stated, however, that "[t]he circuit court's statutory or common law authority to grant relief in a particular case differs from the circuit court's constitutionally granted subject matter and personal jurisdiction." *Id.* Thus, the *Hightower* court declared that, although the UCCJA jurisdiction provisions do not remove subject matter jurisdiction from a court, UCCJA provisions "inform a court" whether it ought to exercise its authority to enter a custody determination because of the statutory limitations. *Id.* We, therefore, must examine whether the circuit court appropriately determined that it had the authority under the UCCJA to make the child custody determination in this case.

■ In its judgment, the circuit court found that it had jurisdiction over the parties and the subject matter. It noted that it had previously determined the issue in association with Rachel Ketteman's motion to dismiss. Indeed, in denying Rachel Ketteman's motion to dismiss, the court's docket entry stated:

> Court conducts communication with Judge Catterton in Tarrant County, Texas. Based upon this communication, as well as all other relevant factors and law, [Rachel Ketteman's] Motion to Dismiss is denied. Missouri is determined to be the appropriate jurisdiction for determination of all matters presented by the pleadings[.][4]

The exhibits submitted at trial established that the District Court of Tarrant County, Texas, denied Rachel Ketteman's petition for divorce finding that neither the petition nor any of the attachments provided the court with adequate facts to support the requirements to exercise jurisdiction over the matter. It is clear that the Clay County Circuit Court exercised its authority over this child custody matter pursuant to UCCJA's section 452.450.1(4), which states:

> (4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

Thus, the record established that the only other state that would have jurisdic-

---

4. It is apparent that both judicial officers did what the UCCJA encourages, that is, to communicate and to determine between them the best forum for this particular case. All too often different judges in different States enter competing orders creating an untenable situation for all concerned. Rachel Ketteman does not challenge the manner in which the communication occurred.

tion over this matter refused to assert jurisdiction and declined to exercise jurisdiction because Missouri was the more appropriate forum. The Circuit Court of Clay County, therefore, had the authority to make the child custody determination in this case under the UCCJA.

In her final point, Rachel Ketteman asserts that the circuit court erred in failing to make findings of fact to support its determination that it had personal jurisdiction over her and had the authority to make a child custody determination under the UCCJA. We disagree.

■ Prior to cases like *J.C.W.,* 275 S.W.3d at 249, and *Hightower,* 304 S.W.3d at 727, which set forth clear instructions on the use of the terms "personal jurisdiction" and "subject matter jurisdiction," the case law interpreting the UCCJA said: "It is implicit in the scheme of the UCCJA that the court make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody." *Piedimonte v. Nissen,* 817 S.W.2d 260, 266 (Mo.App.1991); *see also Schoenecke,* 230 S.W.3d at 67; *Bounds v. O'Brien,* 134 S.W.3d 666, 670 (Mo.App.2004); and *Higgins,* 734 S.W.2d at 277. In light of the Supreme Court's declaration in *J.C.W.* and the cases that have followed *J.C.W.,* we note that rather than declaring that courts should make an initial determination of *jurisdiction* under the UCCJA by express findings, the courts should make an initial determination of their statutory authority to proceed under the UCCJA by express findings before proceeding to the substantive issue of custody. Therefore, it follows that a ruling of the court's authority that is merely conclusory or a ruling that just assumes that the court has authority, but is tacit as to the factual basis for that adjudication, does not meet the objectives of the UCCJA. *Cf. Schoenecke,* 230 S.W.3d at 67; *Bounds,*

134 S.W.3d at 670; and *Piedimonte,* 817 S.W.2d at 266.

■ If, however, this court is able to determine from the factual record that the circuit court had the authority to proceed under the UCCJA and to determine the child custody issue, we need not remand for express findings. *Schoenecke,* 230 S.W.3d at 67. As previously noted, the record in this case established that the circuit court had the authority to make the child custody determination in this case under the UCCJA. The Clay County Circuit Court communicated with the Texas court, and the Texas court refused to assert jurisdiction and declined to exercise jurisdiction because Missouri was the more appropriate forum. Thus, we decline Rachel Ketteman's request that we remand this case for further findings.

## CONCLUSION

Although the circuit court had jurisdiction over the status of the marriage and could dissolve it, it did not have personal jurisdiction over Rachel Ketteman to adjudicate and subject her to an *in personam* judgment for child support and division of marital property. The circuit court did, however, have the authority to make the child custody determination in this case under the UCCJA. We, therefore, affirm the circuit court's judgment dissolving the marriage and awarding the parties joint legal and joint physical custody of their son, but we reverse the circuit court's judgment regarding its order that Rachel Ketteman pay child support in the amount of $278.00 per month and pay certain marital debts.

All concur.