

# SUPREME COURT OF MISSOURI
## en banc

KELLY J. BLANCHETTE,          )
                                      )

        Appellant,           )
                                      )

v.                               )      No. SC95053
                                      )

STEVEN M. BLANCHETTE,      )
                                      )

        Respondent.        )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
**Honorable John N. Borbonus III, Judge**

*Opinion issued December 22, 2015*

Kelly Blanchette appeals from the circuit court's judgment in favor of her former spouse, Steven Blanchette. The circuit court registered the couple's foreign judgment of dissolution and two subsequent judgments modifying custody visitation and support, all issued in West Virginia. The circuit court's judgment dismissed Kelly's motion to modify custody in St. Louis County, Missouri, for lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). After opinion, the court of appeals transferred this case to this Court pursuant to Rule 83.02. The circuit court's judgment is affirmed.

### Factual and Procedural History

The parties were residents of West Virginia when they had a son in November 2003 and were married in March 2004. Steven filed a petition for dissolution in Berkeley

County, West Virginia, in February 2005. Shortly thereafter, and with the Berkeley County Family Court's consent, Kelly, then pregnant, and Son moved to Missouri, and the couple's daughter was born in St. Louis in July 2005.

In January 2006, the parties appeared before the Berkeley County court in person and by counsel and presented their settlement agreement, and related testimony as to all issues, for the court's approval. Relevant here, the Berkeley County court found that jurisdiction and venue were proper as to all matters contained in the petition (including custody, visitation, and support of both children), that both parties resided in West Virginia for more than a year preceding the filing of the dissolution petition, and that there were two children born of the marriage. There is no evidence in the record to suggest either party requested, or the court considered or contacted, St. Louis County as an alternative or preferable forum. The Berkeley County court entered judgment of dissolution, awarded Kelly "primary" physical custody of the children, and ordered Steven to pay child support of $1,500 per month. In 2008, Steven filed a motion to modify, seeking additional custodial time. At a hearing on that motion, Kelly appeared by telephone and by counsel, and the Berkeley County court granted Steven's motion.

In July 2013, after a custodial visit in West Virginia, Steven sent the children (then eight and nine years old) back to Missouri via commercial airliner unaccompanied, over Kelly's vehement protest. On September 6, 2013, Kelly filed in St. Louis County a petition to register the West Virginia dissolution judgment and first modification, combined with a motion to modify the existing parenting plan to require Steven to accompany the children on air travel for visitations. Around the same time, Steven filed

in Berkeley County another motion to modify, seeking to increase his custodial time from one week to six weeks in the summer. Kelly received notice of a hearing on that motion on September 30, eight days before the scheduled date of the hearing. She did not request a continuance and did not appear at the hearing in any manner. In October 2013, the Berkeley County court granted Steven's motion, awarded him six consecutive custodial weeks in the summer, and specified that Kelly could either allow the children to fly unaccompanied or pay half the cost of the accompanying parent's airfare. The order also reduced Steven's child support obligation to $947 per month to reflect the shift in custodial time.

Kelly asked the St. Louis County court not to register this latest West Virginia modification but to grant her proposed modification instead. Steven responded with a motion to dismiss for lack of jurisdiction under the UCCJEA. After extensive briefing and argument, the circuit court issued its judgment registering all three West Virginia judgments (i.e., the original dissolution decree and two subsequent modifications) and dismissing Kelly's competing motion to modify for lack of jurisdiction because West Virginia retained exclusive continuing jurisdiction. The circuit court explained:

> Subject matter jurisdiction exists only when a court has the right to proceed to determine the controversy at issue or grant the relief requested. *Garcia-Huerta v. Garcia*, 108 S.W.3d 684, 686 (Mo. Ct. App. 2003). The issue in this interstate child custody dispute is whether the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), Mo. Rev. Stat. §§ 452.700 to 452.930 (2013) *et seq.*, confers jurisdiction upon this Missouri court to modify a West Virginia judgment as it relates to custody issues.

> The UCCJEA states in pertinent part:

3

Except as otherwise provided in section 452.755, a court of this state shall not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subdivision (1) or (2) of subsection 1 of section 452.740 and:

> (1) The court of the other state determines it no longer has exclusive continuing jurisdiction under section 452.745 or that a court of this state would be a more convenient forum under section 452.770; or

> (2) A court of this state or a court of the other state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in the other state.

Mo. Rev. Stat. § 452.750 (2013).

In this case, Petitioner does not assert the provisions of Mo. Rev. Stat. § 452.755 apply. Thus, for this Court to have jurisdiction to modify the West Virginia judgment as it relates to custody issues, the two-prong test set forth in Mo. Rev. Stat. § 452.750 (2013) must be satisfied. It is not. While this Court does have "jurisdiction to make an initial determination under subdivision (1) or (2) of subsection 1 of section 452.740," the West Virginia court has not "determine[d] it no longer has exclusive continuing jurisdiction under section 452.745" nor has the West Virginia court determined that "a court of this state would be a more convenient forum under section 452.770." Mo. Rev. Stat. § 452.750 (1) (2013). Further, neither this Court nor the West Virginia court has "determine[d] that neither the child, nor a parent, nor any person acting as a parent presently resides in the other state." Mo. Rev. Stat. § 452.750 (2) (2013). In fact, Petitioner concedes Respondent still resides in West Virginia. Accordingly, assuming Missouri continues to have jurisdiction to make an initial determination under subdivision (1) or (2) of subsection 1 of Mo. Rev. Stat. § 452.740, until such time as a West Virginia court determines it no longer has exclusive continuing jurisdiction under section 452.745, OR a West Virginia court determines Missouri would be a more convenient forum under section 452.770, OR Respondent no longer resides in West Virginia, this Court specifically lacks the jurisdiction necessary to modify the custody provisions of the West Virginia judgment.

Kelly appeals and asserts the circuit court erred by: (1) registering the foreign judgments as to Daughter because she has always resided in Missouri, so West Virginia

4

lacked subject matter jurisdiction as to her custody, and (2) giving full faith and credit to the second modification because Kelly did not receive adequate notice of the hearing.

## Standard of Review

A circuit court's decision whether to register a foreign judgment is a legal conclusion, so this Court's review is *de novo*. *Peoples Bank v. Frazee*, 318 S.W.3d 121, 127 (Mo. banc 2010). Whether Missouri has jurisdiction to determine custody under the UCCJEA is also a legal question this Court reviews *de novo*. *Id.* The circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.[1] *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In a proceeding to register a foreign judgment, there is a strong presumption the rendering court had jurisdiction and entered a valid judgment, and the party asserting the invalidity of the foreign judgment has the burden of overcoming the presumption of jurisdiction and validity. *Peoples Bank*, 318 S.W.3d at 127.

## Kelly Has Standing to Appeal

As a preliminary matter, Steven urges this Court to dismiss Kelly's appeal on the theory that Kelly is not an "aggrieved" party under § 512.020[2] (governing who may appeal and what may be appealed) because the circuit court granted the relief she sought

---

[1] Conflicting evidence will be reviewed in the light most favorable to the circuit court's judgment. *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011). This Court defers to the circuit court's credibility assessments. *Id.* When the evidence supports two reasonable but different inferences, this Court is obligated to defer to the circuit court's assessment of the evidence. *Id.*

[2] Missouri statutory citations are to RSMo Supp. 2013, unless otherwise indicated.

5

in her petition, namely registration of the West Virginia judgments. A party is not aggrieved by, and cannot appeal, a judgment that grants all relief sought by the party, but a party can appeal a judgment that grants only part of the relief sought. *Smith v. City of St. Louis*, 395 S.W.3d 20, 27 (Mo. banc 2013). A party is aggrieved when, as an immediate consequence, the judgment operates prejudicially and directly on her rights or interests. *Hertz Corp. v. State Tax Comm'n*, 528 S.W.2d 952, 954 (Mo. banc 1975). Kelly responds that the circuit court did not grant all the relief she sought; rather, she is aggrieved by the circuit court's registration of the second modification, which she did not request and the validity of which she challenges, and by its dismissal of her motion to modify. Insofar as the circuit court did not grant all the relief sought, and because Kelly's custodial rights are immediately and directly affected by the registration of custody orders that she challenges as void, Kelly is sufficiently aggrieved to bring this appeal.[3]

### West Virginia's Jurisdiction as to Daughter

Kelly contends the Berkeley County court lacked subject matter jurisdiction as to Daughter because Missouri is Daughter's home state, making the West Virginia custody orders void as to her. Typically, collateral attacks on final judgments are impermissible, but this rule does not apply when the original judgment was void. *La Presto v. La Presto*, 285 S.W.2d 568, 570 (Mo. 1955). A judgment is void if the issuing court "did not have jurisdiction over the parties, over the subject matter, or in some rare instances where due process rights have been violated." *In re Expungement of Arrest Records Related to Brown v. State*, 226 S.W.3d 147, 150 (Mo. banc 2007). Subject matter jurisdiction

---

[3] Steven's motion to dismiss is, therefore, overruled.

6

cannot be waived or conferred by consent of the parties. *Hightower v. Myers*, 304 S.W.3d 727, 733 (Mo. banc 2010). It can be raised "at anytime by any party or court, even in a collateral or subsequent proceeding." *Id.* Consequently, despite Kelly's participation in the dissolution and first modification proceedings in Berkeley County, this Court will review the merits of her challenge to them now. Steven correctly notes that, in light of *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), Missouri courts interpret the UCCJEA jurisdictional provisions to dictate whether a Missouri court has the statutory authority to grant relief in a particular matter, not whether a Missouri court has subject matter jurisdiction. *Hightower*, 304 S.W.3d at 733. Accordingly, if Kelly were challenging the subject matter jurisdiction of a Missouri court in this case, her challenge would fail. *See id.* at 733–734. In West Virginia, however, no such distinction exists, and the UCCJEA is interpreted to confer actual subject matter jurisdiction. *See In re K.R. and P.R.*, 735 S.E.2d 882, 888–89 (W. Va. 2012).

In both West Virginia and Missouri, child custody jurisdiction (or authority) is governed by the UCCJEA. Relevant to the Berkeley County court's jurisdiction in the underlying case, West Virginia Code § 48-20-201 provides:

> (a) Except as otherwise provided in section 20-204 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:
>
> > (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

7

(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 [inconvenient forum] or 20-208 [jurisdiction declined by reason of conduct], and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivision (1) and (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.[4]

A child's home state is defined as follows:

"Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

---

[4] Missouri's version of this section of the UCCJEA, codified in § 452.740, is substantively identical.

W. Va. Code § 48-20-102(g).

Kelly argues the Berkeley County court lacked jurisdiction to determine custody of Daughter because Daughter's home state is Missouri. But jurisdiction under the UCCJEA attaches when a custody proceeding commences, i.e., when the first pleading is filed. W. Va. Code § 48-20-102(e); *see also In re K.R.*, 735 S.E.2d at 893 n.22 (recognizing that jurisdiction under the UCCJEA is determined at the time of the commencement of a child custody proceeding). In this case, the first pleading was filed when Steven submitted his dissolution petition to the Berkeley County court in February 2005. Clearly, the court acquired jurisdiction to determine custody of Son at that time. Though neither party suggests the UCCJEA confers jurisdiction over fetuses (and courts in sister states have held that it does not—*see*, *e.g., Ark. Dep't of Human Servs. v. Cox*, 82 S.W.3d 806, 812–13 (Ark. 2002)), logically any dissolution action involving minor children must necessarily determine custody of all children of the marriage, including those born after the initial filing.[5] Respecting this imperative, even accepting that the present proceedings did not "commence" as to Daughter until her birth five months after that initial filing, this Court nonetheless cannot construe the home state provisions of the UCCJEA to prescribe the impractical result of bifurcation or transfer of the case midway through litigation. The UCCJEA is intended to avoid jurisdictional competition and

---

[5] In West Virginia, a court must determine custody and support of a child with whom the mother is pregnant during the pendency of the dissolution and when judgment is entered. *See Mitchell v. Mitchell*, 517 S.E.2d 300, 305 n.8 (W. Va. 1999). Similarly, in Missouri, a petition must name each child of the marriage and must state whether the wife is then pregnant (§ 452.310.2(5)), and the resultant decree must resolve the issue of custody in order to be deemed a final judgment. *Glick v. Glick*, 372 S.W.2d 912, 915 (Mo. 1963).

9

conflict. *Al-Hawarey v. Al-Hawarey*, 388 S.W.3d 237, 245 (Mo. App. 2012). The home-state basis for jurisdiction under the UCCJEA is simply inapplicable to Daughter given the facts of this case.

The second and third bases for UCCJEA jurisdiction may have required the Missouri court to have declined jurisdiction on the ground that West Virginia was the more appropriate forum.[6] Nevertheless, at the time of the initial dissolution, Missouri never declined jurisdiction (or, rather, never ceded its authority to hear the case) because Kelly never asked either court to consider until 2013 which forum was more appropriate. *See* RSMo §§ 452.730, 452.735; W. Va. Code §§ 48-20-110, 48-20-112. Even if Kelly had raised the issue immediately after Daughter's birth, the St. Louis County court would have most likely declined jurisdiction because the parties' dissolution was already pending in West Virginia. *See* § 452.765. Under the facts of this case, neither the second nor third bases apply to defeat West Virginia's jurisdiction over the initial custody determination as to Daughter during the parties' pending dissolution proceedings in Berkeley County. By process of elimination, jurisdiction over Daughter's custody, visitation, and support necessarily falls into the fourth category: no other state satisfied the criteria for jurisdiction under the preceding alternatives.

Both West Virginia and Missouri have enacted the policy of "one family, one court." *See* W. Va. Code § 51-2A-2; § 487.080, RSMo Noncum. Supp. 2014. The logical construction of the UCCJEA, as applied to these particular facts, means the

---

[6] A child's physical presence is neither necessary nor sufficient to make a child-custody determination. W. Va. Code § 48-20-201(c); § 452.740.3, RSMo.

10

Berkeley County court of West Virginia had subject matter jurisdiction to determine custody of Daughter. Therefore, the West Virginia judgment of dissolution and both subsequent modifications were not void for lack of jurisdiction, and the St. Louis County court did not err in registering them in Missouri.

**Due Process Was Satisfied Concerning the Second Modification
and Full Faith and Credit is Required**

Kelly contends the St. Louis County circuit court should not have granted full faith and credit to the Berkeley County court's second custody modification because she received inadequate notice of the modification hearing. Under Article IV, § 1 of the United States Constitution and 28 U.S.C. § 1738, Missouri is required to give full faith and credit to judicial proceedings in other states unless there was: (1) lack of jurisdiction over the subject matter; (2) failure to give due notice to the defendant; or (3) fraud in the procurement of the judgment. *In re Storment*, 873 S.W.2d 227, 230 (Mo. banc 1994).

Under the UCCJEA, persons living outside the forum state can be served in accordance with the laws of either the forum state or the state where service is made. W. Va. Code § 48-20-108(a); § 452.762.1, RSMo. Notice must be given in a manner reasonably calculated to give actual notice. W. Va. Code § 48-20-108(a); § 452.762.1, RSMo. Kelly argues she was entitled to 30 days' notice under both West Virginia and Missouri rules of civil procedure, specifically W. Va. Rules Civ. Proc. Rule 4(f) and Mo. Rule 55.25. Steven counters that those rules only govern initial complaints and responsive pleadings and do not apply to subsequent modification proceedings. He asserts, rather, that eight days' notice is sufficient under the rules governing service on

11

motion hearings, specifically W. Va. Rules Civ. Proc. Rule 6(d) (requiring seven days' notice by personal service or nine days' notice by mail).[7]

But West Virginia's enactment of the UCCJEA does not contain this procedural clarification, and this Court's own research has uncovered no clear directive on the matter.[8] Absent a definitive statute or court rule prescribing a particular timeframe for notice of custody modifications, West Virginia precedent instructs this Court to simply follow the fundamental principle that due process requires reasonable notice and an opportunity to be heard. *See*, *e.g., Brittany S.*, 753 S.E.2d at 750. For that inquiry, notice required by due process is fact-specific and will vary with the circumstances and conditions presented. *State v. Elliott*, 225 S.W.3d 423, 424 (Mo. banc 2007).

---

[7] Missouri's version of the UCCJEA provides that service of any petition for modification "shall be obtained and responsive pleadings may be filed as in any original proceeding." § 452.747.1, RSMo. Respondents have 30 days after the date of service to file an answer. § 452.747.2, RSMo.

[8] West Virginia divorce actions are commenced by the filing of a petition. W. Va. Family Court Rule 9(a). Those involving children must be accompanied by a child support enforcement form. *Id.* The summons must be served on the respondent within 20 days of the filing of the petition. W. Va. Family Court Rule 9(b). The respondent has 20 days to file an answer. W. Va. Family Court Rule 9(c); W. Va. Rules Civ. Proc. Rule 12. Respondents served outside the state have 30 days to appear and defend or be deemed in default. W. Va. Rules Civ. Proc. Rule 4(f). Motion hearings require seven days' notice by personal service or nine days' notice by mail. W. Va. Rules Civ. Proc. Rule 6(d). Various versions of West Virginia's modification statute (previously § 48-2-15 and now § 48-9-401) have required that custody modification be requested by motion or petition. *See Brittany S. v. Amos F.*, 753 S.E.2d 745, 751 n.12 (W. Va. 2012) (noting historical evolution of the statute's pleading requirement). West Virginia Family Court Rule 50 currently requires a petition, and Family Court Rule 2l(a) requires a hearing to be held within 45 days of the filing. But nothing in the foregoing identifies the applicable service rule or prescribes a specific timeframe for modifications. Even the state judiciary's *pro se* court forms fail to illuminate the matter: although the initial divorce answer instructions alert respondents to the 20-day deadline, the modification packet contains no answer form and identifies no notice period or deadline for a responsive pleading, stating only that the petition must be served on the opposing party before the hearing can be scheduled.

Kelly was no stranger to the Berkeley County Family Court. She was a West Virginia resident when the divorce action commenced, she appeared in person and by counsel at the original hearing, and she appeared telephonically and by counsel in the first modification. Kelly was previously served in accord with the rules of West Virginia and had the opportunity to participate in the hearing telephonically or at the very least to request a continuance. She did neither and elected not to appear at all. Additionally, Kelly has not moved to set aside the second order of modification or appealed it in West Virginia. Given these particular facts, this Court determines Kelly received reasonable notice and an opportunity to be heard sufficient to satisfy due process.

## Conclusion

Steven's motion to dismiss is overruled. The circuit court did not err in recognizing and registering the original judgment and both subsequent judgments modifying custody, visitation and support; therefore, the judgment is affirmed.

_____
Zel M. Fischer, Judge

All concur.

13