

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **CHARLES L. BURGETT,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | **WD79431** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **January 17, 2017** |
| **TASHA R. THOMAS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable S. Margene Burnett, Judge**

**Before Division IV:** Mark D. Pfeiffer, Chief Judge, and
Thomas H. Newton and Gary D. Witt, Judges

Mr. Charles L. Burgett ("Father") appeals, *pro se*, a judgment by the Jackson County Circuit Court ("trial court") dismissing the paternity and child custody lawsuit he brought against the mother, Ms. Tasha R. Thomas ("Mother"), of his purported natural child, Princess Ashe-Rena Thomas ("Child"). We affirm.

## Factual and Procedural Background

In 2002, Father and Mother engaged in a sexual relationship that ultimately resulted in the birth of Child on June 16, 2003. Child has primarily resided with Mother for most or all of her life, residing in Johnson County, Kansas, for two years prior to the filing of Father's lawsuit in the

State of Missouri.  Child attended public school in Johnson County, Kansas.  Father appears to have had some amount of contact with Child given that the Johnson County, Kansas, Department for Children and Family Services ("Kansas DCF") was notified of possible physical and/or emotional abuse involving both Father and Mother in 2013.

As is relevant to the instant case, by order of the District Court of Johnson County, Kansas ("Kansas District Court"), Kansas DCF took Child into temporary protective custody on February 13, 2015, and the Kansas District Court later entered subsequent orders relating to Child in July 2015.

In June 2015, while the Kansas District Court custody proceeding was still pending, Father filed the instant lawsuit against Mother in Missouri, alleging that Mother and Child live in Missouri and not Kansas.  In addition to seeking a determination of paternity as to Child, Father also sought primary custody of Child, an official surname change for Child, and child support from Mother.  A trial judge was assigned to the case on June 26, 2015.

Mother was never successfully served with process in the instant case; instead, the process server assigned to the case reported that the Missouri address Father provided in his pleading was a "bad address" for Mother.  Nonetheless, Mother voluntarily entered her appearance at a case management conference held on November 19, 2015.

The trial court conducted an evidentiary hearing on December 1, 2015, to determine the issue of which state—Missouri or Kansas—had priority jurisdiction[1] to adjudicate Father's

---

[1] As we explained in *Ketteman v. Ketteman*, 347 S.W.3d 647 (Mo. App. W.D. 2011), the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") "prioritizes various interests to facilitate a determination of which of the various courts should exercise its jurisdiction and which should refrain from exercising its jurisdiction." *Id.* at 653-54.

paternity suit pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").[2]

The trial court ultimately determined that it did not have the statutory authority to proceed with Father's case because Missouri was not Child's home state, nor had it been Child's home state within six months prior to the commencement of Father's suit, and a custody proceeding involving the Child had been commenced in Kansas that was still pending at the time Father filed the instant suit. Accordingly, the trial court dismissed Father's paternity suit without prejudice by Judgment dated December 1, 2015.[3]

*After* the trial court's dispositive ruling on Father's petition, Father filed an application for change of judge on December 18, 2015. Father also filed a Rule 78.01 motion seeking a new trial on December 29, 2015. The trial court denied both the application for change of judge and the motion seeking a new trial.

Father appeals.

## I. Trial Court's UCCJEA Ruling

In Point I, Father appeals from the denial of his post-judgment motion seeking a new trial. We note from the outset that "[n]o appeal lies from an order overruling a motion for a new trial, but the aggrieved party may appeal from a final judgment entered against [it]." *Basta v. Kansas City Power & Light Co.*, 456 S.W.3d 447, 451 (Mo. App. W.D. 2014) (internal quotation omitted).

---

[2] The UCCJEA is codified in sections 452.700 through 452.930 of the Revised Statutes of Missouri. All statutory citations refer to Revised Statutes of Missouri 2000, as supplemented, unless otherwise indicated.

[3] As a general rule, "a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *K.M.J. v. M.A.J.*, 363 S.W.3d 172, 175 (Mo. App. E.D. 2012). However, "[a]n appeal from such a dismissal [without prejudice] can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum." *Id.* Such a situation arises when—as in the present case—a circuit court dismisses a paternity and child support action for lack of jurisdiction, and that dismissal has the practical effect of terminating the litigation in the plaintiff's chosen forum. *See generally id.* Thus, the circuit court's dismissal of Father's suit without prejudice *was* a final judgment capable of review on appeal because it had the practical effect of terminating the suit in Father's chosen forum, Missouri.

That said, the gist of Father's argument in Point I is that the trial court erred in refusing to exercise jurisdiction under the UCCJEA. We therefore assume that Father's appeal is from the trial court's *judgment* dismissing his suit without prejudice, and we exercise our discretion to review the same to determine whether the trial court erred in concluding that it did not have the statutory authority to exercise jurisdiction over Father's case.

*Standard of Review*

"Whether Missouri has jurisdiction to determine custody under the UCCJEA is . . . a legal question this Court reviews *de novo*. The circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Blanchette v. Blanchette*, 476 S.W.3d 273, 277-78 (Mo. banc 2015) (internal citations omitted). We view any conflicting evidence in the light most favorable to the circuit court's judgment and defer to its credibility assessments. *Id.* at 278 n.1. "When the evidence supports two reasonable but different inferences, [we are] obligated to defer to the circuit court's assessment of the evidence." *Id.*

*Analysis*

Under Missouri law, the UCCJEA provides "the exclusive jurisdictional basis for making a child custody determination by a court of this state." § 452.740.2. *See also Ketteman v. Ketteman*, 347 S.W.3d 647, 653 (Mo. App. W.D. 2011) ("[T]he provisions of the [UCCJEA] must be met for Missouri courts to have subject matter jurisdiction over a child custody proceeding."). On this jurisdictional topic, section 452.740.1(1) mandates that Missouri must either be the child's home state[4] on the date of the commencement of the proceeding, **or** Missouri must have been the

---

[4] "Home state" is defined as:

child's home state within six months prior to the commencement of the proceeding **and** the child is currently absent from the state but a parent or person acting as a parent continues to live in Missouri. § 452.740.1(1). Further, the UCCJEA provides that Missouri courts shall not exercise jurisdiction "if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child had been previously commenced in a court of another state having jurisdiction" in conformity with the UCCJEA, "unless the proceeding has been terminated." § 452.765.1.

Missouri courts, therefore, "should make an initial determination of their statutory authority to proceed under the [UCCJEA] by express findings before proceeding to the substantive issue of custody." *Ketteman*, 347 S.W.3d at 655.

In the instant case, the trial court determined, in part, that it did not have the statutory authority to proceed with Father's case because the credible evidence demonstrated that Child had resided in Kansas with Mother for two years prior to the filing of Father's Missouri lawsuit. Hence, Missouri was neither Child's present home state, nor had Missouri been Child's home state within six months prior to the commencement of Father's suit. On this basis alone, we conclude that there is substantial evidence in the record to support the trial court's "home state" conclusion regarding Child and we must affirm the trial court's judgment.

Here, there was conflicting evidence about Child's (and Mother's) residence. First, Mother claimed that she lived in Johnson County, Kansas, and had lived there for a period of two years prior to the filing of Father's paternity and custody petition. In contrast, Father claimed that

---

[T]he state in which a child has lived with a parent or a person acting as a parent for at least six consecutive months immediately prior to the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of such period[.]

§ 452.705(8).

Mother lived with Child in Missouri. However, the trial court noted in its judgment that the Missouri address Father provided to the process server for service upon Mother was ineffective, with the process server reporting it to be a "bad address" and returning the summons *non-est*. Second, there was evidence in the record that Child attended school in Kansas rather than Missouri, which necessarily implies that Child had some official residence in the State of Kansas for the purposes of school mailings and enrollment.[5] Finally, a Kansas District Court proceeding involving the custody of Child was pending at the time of Father's lawsuit filed in the present case. In its judgment, the trial court concluded that the credible evidence was that Mother and Child had resided in the State of Kansas for two years preceding the filing of Father's lawsuit in Missouri.

As stated above, we view any conflicting evidence in the light most favorable to the trial court's judgment; we defer to the trial court's credibility assessments; and "[w]hen the evidence supports two reasonable but different inferences, [we are] obligated to defer to the circuit court's assessment of the evidence." *Blanchette v. Blanchette*, 476 S.W.3d 273, 278 n.1 (Mo. banc 2015). In light of this standard, we defer to the trial court's conclusion that the credible evidence was that Mother and Child resided in the State of Kansas and had resided in the State of Kansas for two years prior to the commencement of Father's lawsuit in Missouri. This conclusion provided substantial evidence supporting the trial court's judgment concluding that Missouri was not Child's home state on the date of the commencement of Father's lawsuit, nor had the State of Missouri been Child's home state at any time within the six months prior to the commencement of Father's lawsuit. Accordingly, we find no error in the trial court's judgment declining to exercise priority jurisdiction under the UCCJEA.

---

[5] Father himself pointed to pleadings in an unrelated Kansas lawsuit in which a Kansas assistant district prosecutor had referenced an address for Mother in Missouri; however, that same pleading referenced that Child was then both residing with Mother *and* attending the public schools of the State of Kansas.

Point I is denied.

## II. Father's Application for Change of Judge

In Point II, Father argues that *after* the dispositive issue in the underlying case had been submitted to the trial court and *after* the trial court had issued a dispositive judgment on December 1, 2015, it was error for the trial court to deny an application for change of judge that he claims was timely filed under Rule 51.05.[6] We disagree.

*Standard of Review*

> A denial of a motion for change of judge is reviewed for an abuse of discretion. An abuse of discretion is committed if the trial court's decision defies logic under the circumstances, is sufficiently arbitrary and unreasonable to shock the conscience of the court, and exhibits a dearth of careful consideration.

*City of Kansas City v. Powell*, 451 S.W.3d 724, 742-43 (Mo. App. W.D. 2014) (internal citations and quotations omitted).

*Analysis*

Under Missouri law, "[i]t has long been settled . . . that the right to disqualify a judge is not to be employed to produce inconvenience and absurdity." *Jenkins v. Andrews*, 526 S.W.2d 369, 372 (Mo. App. 1975) (internal quotation omitted). In *Jenkins*, the "absurdity" referenced by the court was an attempt by the appellants to seek a change of judge after dispositive proceedings had already been submitted to the trial court. *Id.* at 373. Ultimately, the *Jenkins* court found no error in the denial of the request for change of judge after a dispositive proceeding had been submitted to the trial court. *Id.*

---

[6] In pertinent part, Rule 51.05 provides that "[a] change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by a party. . . . The application must be filed within 60 days from service of process or 30 days from the designation of the trial judge, whichever time is longer." Rule 51.05(a)-(b). Here, Mother was not served and instead voluntarily waived service and entered her appearance on November 19, 2015. Hence, Father claims that his application for change of judge on December 18, 2015, fell within the longer 60-day time limit, albeit *after* the trial court had already issued its judgment.

Similarly, in *Heller v. Aldi, Inc.*, the court affirmed the denial of a timely filed application for change of judge, noting that "Rule 51.05, relating to application for change of judge, is not to be construed as subverting [dispositive] proceedings already begun by a trial court." 851 S.W.2d 82, 85 (Mo. App. E.D. 1993). Finally, in *Elrod v. Stewart*, we distinguished *Jenkins* (and reversed the trial court's ruling refusing to grant the application for change of judge) by noting that in the *Elrod* case, unlike *Jenkins*, "[a]t the time of the filing of Appellant's [timely] application for change of judge . . . , no matter was under submission to the trial court." 163 S.W.3d 587, 592 (Mo. App. W.D. 2005).

Here, not only had the dispositive proceeding been *submitted* to the trial court, the trial court had already ruled upon the dispositive issue and entered *judgment*. To permit Father to obtain a change of judge *after* judgment has been entered by the trial court would subvert the proceedings below and produce an absurd result. This we will not do.

Accordingly, we conclude that the trial court did not abuse its discretion in denying Father's application for change of judge after judgment had already been entered by the trial court.

Point II is denied.

### Conclusion

The trial court's judgment is affirmed.

Mark D. Pfeiffer, Chief Judge

Thomas H. Newton and Gary D. Witt, Judges, concur.

8